**Steven A. GREENBERG, Plaintiff,**

v.

**Steven CHRUST, Defendant.**

**No. 01 CIV. 10080(RWS).**

United States District Court, S.D. New York.

April 26, 2002.

Olshan Grundman Frome Rosenzweig & Wolosky by Thomas J. Fleming, Esq., Kenneth J. Rubinstein, Esq., Michael B. Fisher, Esq., New York City, for Plaintiff.

Graubard Miller by Edward H. Pomeranz, Esq., Alan S. Rafterman, Esq., New York City, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Steven Chrust ("Chrust") has moved under Rule 12(b)6, Fed.R.Civ.P., to dismiss the complaint of plaintiff Steven A. Greenberg ("Greenberg") and alternatively to strike portions of the complaint. For the reasons set forth below, the motion is granted in part and denied in part.

### Prior Proceedings

This action was commenced on November 14, 2001, by the filing of a complaint alleging causes of action for (1) common law fraud; (2) securities fraud; (3) negligent misrepresentations; and (4) breach of fiduciary duty.

The instant motion to dismiss was heard and marked fully submitted on January 23, 2002.

### The Facts

The facts as set forth below are alleged in the complaint and in the submissions of the parties and do not represent findings by the Court.

Greenberg, a New York resident, was one of three founders of Worlds Acquisition Corp., a corporation formed in 1997 for the purpose of acquiring Worlds Inc. In December 1997, a three-way merger between Worlds Acquisition Corp., Worlds Inc. and Academic Computer Systems, Inc., was effected. The surviving corporation was called Worlds, Inc. Prior to and subsequent to the merger, Academic Computer Systems, Inc. was a publicly traded corporation, and as a result of the merger, the newly formed corporation began trading under the name Worlds, Inc. On November 9, 1999, Worlds, Inc. changed its name to Worlds.com. Greenberg was pri-

marily responsible for structuring and negotiating the merger and arranging the financing related to the merger. Subsequent to the merger, and until December 31, 2000, he was the largest shareholder in Worlds.com. Currently, Greenberg owns approximately 2,000,000 shares of Worlds.com common stock.

Worlds.com is a 3–D entertainment portal using its proprietary technology to offer visitors a network of virtual, multi-user environments called "worlds." These worlds are on-line environments featuring animation, motion, and content where people can shop, interact with others, attend events, and be entertained. In support of this portal and its overall business strategy, Worlds.com designs and develops software, content, and related technology for the creation of interactive 3–D internet websites. Using its technology, Worlds.com creates its own internet sites as well as sites available through third party on-line service providers.

Chrust, a Connecticut resident, participated as an investor in the financing related to the merger. He was employed as the vice-chairman of Winstar Communications, Inc. ("Winstar"), a publicly traded company engaged in the telecommunications industry. In December 1998, Chrust contacted Greenberg to inquire about possible involvement with Worlds.com. Chrust claimed to be a co-founder of Winstar and told Greenberg that he was voluntarily leaving Winstar to pursue his long-time passion of working with smaller companies to aid in their growth through developing their business plan and assisting in their financing and business development.

Chrust and Greenberg met on at least six occasions between January 3, 1999 and April 8, 1999. Chrust made specific representations to Greenberg concerning his background and business acumen, including that (a) he voluntarily resigned his position as vice chairman and as a director of Winstar; (b) he successfully worked with small companies in the past and aided in their financing and development; and (c) he managed a hedge fund with a record of impressive growth in which he personally maintained substantial holdings. He represented to Greenberg that Worlds.com needed to install a new president and chief executive officer to replace the then-president and CEO, which search efforts he would undertake; the company needed a high level chief financial officer with certain specific experience, which search efforts he would also undertake; and he was capable of raising, and would raise, the necessary substantial capital to permit the company to pursue its business plan and objectives aggressively. As a result of these meetings and discussions, Greenberg developed a level of trust and confidence in Chrust.

Relying on Chrust's representations and demands, Greenberg agreed to transfer to the company 881,750 shares of common stock (then with a market value of $3,720,985) which he owned and which he alleges, at the time, represented over 4% of the total issued and outstanding stock in the company. Greenberg supported Chrust's appointment as chairman of the board of directors.

Chrust explicitly represented to Greenberg that his contribution of shares was to be used as part of Chrust's undertaking to retain a new president, chief executive officer, and chief financial officer for Worlds.com so that there would not be a dilutive effect on the existing outstanding common shares of Worlds.com. Furthermore, in connection with Chrust's representations, Greenberg entered into a voting trust agreement with other shareholders, proving that the shares held by Greenberg and others would be voted for Chrust's election to the board of directors of the company.

The closing price of the Worlds.com shares on April 13, 1999, the date of Chrust's hire and Greenberg's 881,750 stock contribution, was $4.22 per share.

Chrust had been forced to resign as vice chairman and as a director of Winstar as a result of acts of misconduct and certain improprieties, and was not involved in successfully developing small companies and raising capital for their financing. Chrust had been associated, as an officer and/or director, with numerous companies whose businesses floundered, failed, or went bankrupt, including AMNEX Inc., Executone Information Services, Inc., Umagic Systems, Inc., E–Globe Inc., and FiberNet Telecom Group, Inc.

Following his appointment as chairman of the board, Chrust failed to recruit or hire a president, chief executive officer, or chief financial officer for the company for a considerable period of time after his retention. Within six months after Chrust became chairman, Worlds.com was rendered insolvent, as its short term liabilities exceeded its current assets, and in the one year period following his appointment, it experienced its greatest losses ever.

Chrust also allegedly engaged in numerous acts of misconduct and illegal activity, including: (1) causing false and misleading press releases concerning investments in Worlds.com; (2) causing false and misleading SEC filings to be filed; (3) suppressing certain information from the public in an effort to depress the stock price of Worlds.com to allow Chrust to purchase additional shares at reduced prices; (4) engaging in insider trading of Worlds.com stock; (5) causing false and misleading press releases to be issued regarding the Worlds.com's operations; and (6) failing to provide full disclosure regarding his affiliations with other publicly traded companies in compliance with federal securities laws.

The complaint refers to two written agreements, a March 23, 1999 agreement between SGC Advisory Services, Inc. ("SGC") and Worlds.com, under which SGC was retained as a consultant and Worlds.com became obligated to appoint Chrust as chairman of its board of directors, and an April 13, 1999 agreement pursuant to which Greenberg and two other Worlds.com shareholders agreed to vote for Chrust as a director of Worlds.com during the term of the consulting agreement and to contribute a portion of each such shareholder's Worlds.com stock back to the company. Chrust, in his individual capacity, is not a party to either agreement. The complaint seeks as damages the purported value of the 881,750 shares of Worlds.com stock Greenberg contributed on April 13, 1999.

### Discussion

### I. The Causes of Action for Fraud as to Future Performance are Dismissed

In resolving a motion to dismiss, the factual allegations set forth in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). In other words, the burden upon the movant is substantial, as the issue before the Court on a Rule 12(b)6 motion is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. *Gant v. Wallingford Board of Education*, 69 F.3d 669, 673 (2d Cir.1995).

Greenberg's claims of fraud and negligent misrepresentation are based upon representations made by Chrust that (a) he voluntarily resigned his position as vice chairman and as a director of Winstar; (b) he successfully worked with small companies in the past and aided in their financing and development; (c) he managed a hedge fund with a record of impressive

growth in which he personally maintained substantial holdings; (d) he would undertake locating and installing a new president, chief executive officer and chief financial officer; and (e) he would raise the necessary substantial capital to permit Worlds.com to aggressively pursue its business plan and objectives.

### A. Misrepresentations as to Employment Background and Business Acumen

■ "A New York common law fraud claim is defined as a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *See Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 104 (2d Cir.2001). Therefore, in an action to recover damages for fraud under New York law, the plaintiff must allege: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury. *See AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 208 (2d Cir.2000) (*citing Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)).

The allegations in the complaint regarding Chrust's misrepresentation of his employment background and business acumen (i.e. that he resigned his position at Winstar, that he successfully aided small companies, and that he managed a successful hedge fund) satisfy the requirements for a fraud claim. Greenberg has alleged that such representations were false and known to be false when made; that they were made to induce Greenberg to contrib-

ute his shares back to the company; and that Greenberg relied on these representations and was injured as a result.

Relying on the consulting agreement between SGC and Worlds.com, Chrust claims that the agreement itself bars claims by Greenberg, a non-party to the agreement. However, a claim for fraud can be asserted as there is no agreement between the parties barring such a claim. *See, e.g., Champion Motor Group v. Visone Corvette of Massachusetts*, 992 F.Supp. 203, 208 (E.D.N.Y.1998) ("Plaintiff's fraud claim does not simply reiterate the breach of contract claim because it does not allege the existence of a contract"); *Oei v. Citibank, N.A.*, 957 F.Supp. 492, 520 (S.D.N.Y. 1997) (Fraud claim is viable where allegations are "separate and distinct from those giving rise to [a] breach of contract claim.") (internal quotations omitted).

Chrust also has asserted that because his business background was published in public filings, Greenberg's reliance on Chrust's oral representations as to his background and business acumen was not reasonable. However, the only published material regarding Chrust's background cites only a listing of the companies for which Chrust worked or with which he was affiliated. There is no statement regarding Chrust's departure from these companies or his reputed successes or failures upon which the claims herein are based.

Chrust's submission of an agreement with Winstar, which provided that Chrust would continue his employment with Winstar through January 2, 2000, was not disclosed to Greenberg and was not made in Worlds.com public filings. It does not affect the claim relating to Chrust's termination at Winstar.

Moreover, several of the cases cited by Chrust in support of his public filing theory are misplaced. In *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91

(2d Cir.1997), for instance, the Second Circuit affirmed the dismissal of a common law fraud claim *after* trial, not where, as here, we must accept as true the allegations in the complaint. *See Laser Mortgage Management, Inc. v. Asset Securitization Corp.*, No. 00 Civ. 8100(NRB), 2001 WL 1029407, at *10 n. 10, 12 (S.D.N.Y. Sept. 6, 2001) (distinguishing *Schlaifer* from cases decided at the pleading stage and further noting that even if a plaintiff has sufficient access to relevant information and an opportunity to detect a fraud, "these are but two of the factors that we require to consider in determining whether the plaintiff was reckless."). In *Sado v. Ellis*, 882 F.Supp. 1401, 1407 (S.D.N.Y. 1995), also cited to by Chrust, parties were at the summary judgment stage before the court found no reliance because the document at issue was publically available. *See also Waltree Ltd. v. Ing. Furman Selz LLC*, 97 F.Supp.2d 464, 469 (S.D.N.Y.2000) (implausibility of investor's alleged reliance "unavailing" at the motion to dismiss stage).

Finally, Chrust argues that Greenberg has failed to satisfy the pleading requirements of the Federal Rules of Civil Procedure. Under Rule 9(b), Fed.R.Civ.P., a complaint alleging fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lewis v. Rosenfeld*, 138 F.Supp.2d 466, 478 (S.D.N.Y. 2001) (*quoting Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir.1999)) (internal quotations omitted).

Greenberg has, with sufficient particularity, specified the statements made by defendant which were fraudulent, identified who made the statements, when they were made (to plaintiff and others on various occasions prior to defendant's reten-tion as chairman of the board) and why they were fraudulent. *See, e.g., Lewis*, 138 F.Supp.2d at 478–79; *cf. In re AnnTaylor Stores Securities Litigation*, 807 F.Supp. 990, 1004 (S.D.N.Y.1992) (complaint alleging securities fraud supplied "as much detail of the alleged fraud as can be expected before discovery commences" and was thus pled with the required particularity).

## B. Misrepresentations as to Future Acts

■ Greenberg's complaint also alleges that Chrust made certain misrepresentations regarding his future plans for Worlds.com, namely that he would locate and help install a new president, chief executive officer and chief financial officer, and that he would raise the capital necessary to permit Worlds.com to pursue its business plan and objectives.

The Court of Appeals has stated that "the failure to fulfill a promise to perform future acts is not grounds for a fraud action." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). While the failure to perform future acts can serve as the basis for a fraud claim where there "existed an intent not to perform at the time the promise was made," *id.* at 1172, fraud cannot be established by mere allegations that a party failed to perform a promise adequately. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 576 (2d Cir.1969) ("[R]epeated references to [defendant's] unsatisfactory performance" fails to establish "an intention not to perform").

Greenberg's allegation that the representations were false at the time they were made does not save the claim. *Drexel Burnham Lambert, Inc. v. Saxony Heights Realty*, 777 F.Supp. 228, 235 (S.D.N.Y.1991) ("[A]n attempt to convert a contract claim into a tort by the additional naked assertion that the breaching party never intended to perform is doomed to

fail"); *Hotel Constr., Inc. v. Seagrave Corp.,* 574 F.Supp. 384, 388 (S.D.N.Y.1983) ("A purely conclusory allegation that defendant never intended to perform, standing alone, could not convert a claim for breach of contract into one for fraudulent inducement to contract"). Nor is it sufficient that Greenberg claims Chrust did not interview enough people or act quickly enough to fill the positions of CEO and CFO for Worlds.com. *See Singer,* 410 F.2d at 576 ("Except for repeated references to [defendant's] unsatisfactory performance under the ... contract, [plaintiff] was unable to point to any evidence of an intention not to perform, and ... actionable fraud depends on more than a showing of non-performance."); *see also Philips Credit Corp. v. Regent Health Group, Inc.,* 953 F.Supp. 482 (S.D.N.Y.1997) (holding that fraudulent intent cannot be inferred merely from the non-performance of a party's representations).

The fraud claim is dismissed insofar as it relates to Chrust's alleged promises to perform future acts.

## II. *The Claims for Negligent Misrepresentation as to Future Performance and Breach of Fiduciary Duty are Dismissed*

■ "Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. However, the alleged misrepresentation must be factual in nature and not promis-

sory or relating to future events that might never come to fruition." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir.2000) (citations omitted); *see also Lewis,* 138 F.Supp.2d at 479–80.

Under this standard, Greenberg's negligent misrepresentation claims must be dismissed for the same reasons his fraud claims are dismissed insofar as they rely on Chrust's failure to perform future acts. As in the case of fraud, discussed above, "[n]o action for negligent misrepresentation lies where the alleged misrepresentation is promissory rather than factual." *U.S. West Financial Services, Inc. v. Tollman,* 786 F.Supp. 333, 344 (S.D.N.Y.1992) (citations omitted). Thus, the alleged failure by Chrust to undertake locate and install officers or raise capital for Worlds. com's business objectives cannot serve as the basis for a negligent misrepresentation claim.

■ As to Greenberg's claim that Chrust was negligent in providing misrepresentations as to his background and business acumen, there remains the issue of whether Greenberg has sufficiently alleged that Chrust owed him a duty to provide correct information. The New York Court of Appeals has held that the special duty giving rise to a negligent misrepresentation claim must arise out of contract or some aspect of the relationship approaching that of privity of contract. *Parrott v. Coopers & Lybrand, L.L.P.,* 95 N.Y.2d 479, 483, 741 N.E.2d 506, 718 N.Y.S.2d 709 (2000) ("We have reiterated time and again that before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity."). This standard was clarified in the case of *Kimmell v. Schaefer,* 89 N.Y.2d 257, 652

N.Y.S.2d 715, 675 N.E.2d 450 (1996), where the court found that the existence of a special relationship outside the context of professionals is generally governed by the weighing of three factors: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* at 264, 652 N.Y.S.2d 715, 675 N.E.2d 450.

"Although the precise contours of this special relationship escape easy definition, courts have held that the parties must enjoy a relationship of trust and reliance closer than that of the ordinary buyer and seller, and an arm's length business relationship is not enough to create that relationship." *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.,* 165 F.Supp.2d 514, 536 (S.D.N.Y.2001) (*citing Goodman Mfg. Co. L.P. v. Raytheon Co.,* No. 98 Civ. 2774(LAP), 1999 WL 681382, at *14 (S.D.N.Y. Aug. 31, 1999); *Dimon Inc. v. Folium, Inc.,* 48 F.Supp.2d 359, 373 (S.D.N.Y.1999)); *see also McCoy v. Goldberg,* 883 F.Supp. 927, 941 (S.D.N.Y. 1995) ("[A]n ordinary contractual relationship is often insufficient to establish a special relationship ... while a continuing or potentially long-term contractual relationship may do so.").

Greenberg has not alleged that any actual privity of contract between Chrust existed which may have given rise to a duty to provide correct information. Nor has he alleged any facts that suggest a relationship approaching privity or amounting to anything other than an arm's length business relationship between two sophisticated parties. Rather, the only basis Greenberg has identified for the required duty is an alleged fiduciary rela-tionship with Greenberg arising out of the negotiations leading to Chrust's appointment as director. However, no duty can be found based on this allegation.

While Greenberg contends that he was part of the negotiations for Chrust's retention by Worlds.com and that as part of such negotiations he agreed to contribute his 881,750 shares of Worlds.com stock and support Chrust's retention, parties to arms length commercial contracts do not owe each other a fiduciary obligation. *Beneficial Commercial Corp. v. Murray Glick Datsun Inc.,* 601 F.Supp. 770, 772 (S.D.N.Y.1985) ("No fiduciary relationship exists under the facts alleged in the pleadings which show that the two parties were acting and contracting at arms length."); *Compania Sud. Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,* 785 F.Supp. 411, 426 (S.D.N.Y.1992) ("[W]here parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.") (internal quotations and citations omitted). Further, "conclusory statements about the existence of a fiduciary relationship" are insufficient to establish such a relationship. *Compania,* 785 F.Supp. at 425–26 (finding no fiduciary relationship when plaintiff failed to establish "that the dealings between the parties were not arms length"); *ESI, Inc. v. Coastal Power Production Co.,* 995 F.Supp. 419, 434 (S.D.N.Y.1998) (holding that a conventional business relationship does not become a fiduciary relationship merely by allegation). The fact that Chrust eventually became a director of Worlds.com in and of itself does not give rise to a fiduciary obligation owed to Greenberg, a shareholder.

Because Greenberg has not alleged facts that suggest he and Chrust established anything beyond an arms length business

relationship, the negligent misrepresentation claim will be dismissed. Because no fiduciary relationship has been found, the claim for breach of fiduciary duty is also dismissed.

### III. *The Section 10(b) and Rule 10b–5 Claim is Dismissed*

■ "To state a claim for relief under Rule 10b–5, a plaintiff must allege that, in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury." *Press v. Chem. Invest. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir.1999) (internal quotations and citation omitted).

Chrust has asserted that Greenberg's allegations fail to meet the "in connection" requirement of a Section 10(b) claim. Courts in this Circuit have held that "[m]isrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves cannot form the basis of a violation of Section 10(b) or Rule 10b–5." *Manufacturers Hanover Trust Co. v. Smith Barney, Harris Upham & Co.*, 770 F.Supp. 176, 181 (S.D.N.Y.1991); *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984) (misrepresentations must pertain to the securities themselves to form a basis of a § 10(b) or Rule 10b–5 claim).

Here, no misrepresentations were made with respect to Worlds.com. Greenberg has merely alleged that without Chrust's misrepresentations, Greenberg would not have contributed his 881,750 shares to the company. He makes no allegations of misrepresentations with respect to the characteristics and attributes of the shares. This claim, even if taken as true, does not "relate to the value of the security." *Press*,

988 F.Supp. at 389; *see also Chemical Bank*, 726 F.2d at 943 ("The Act and Rule [§ 10(b) and Rule 10b–5] impose liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part."); *Bernstein v. Misk*, 948 F.Supp. 228, 243 (E.D.N.Y.1997) ("[T]he in connection with requirement mandates that the alleged fraud concern the fundamental nature of the securities: namely, characteristics and attributes that would induce investors to buy or sell the particular security").

Further, there is no allegation of loss causation, a necessary element of a Section 10(b) claim. As the Court of Appeals has explained:

> Causation in this context has two elements: transaction causation and loss causation. Loss causation is causation in the traditional "proximate cause" sense—the allegedly unlawful conduct caused the economic harm. Transaction causation means that the violations in question caused the appellant to engage in the transaction in question. Transaction causation has been analogized to reliance.

*AUSA*, 206 F.3d at 209 (internal quotations and citations omitted). Greenberg alleges that but for Chrust's misrepresentations concerning his prior employment history, business background, and actions to be undertaken on behalf of Worlds.com, Greenberg would not have contributed his shares of stock to the company as part of Chrust's retention. While this contention is sufficient for a pleading of transaction causation, there is no indication from the complaint that Greenberg has alleged that the injury suffered was a "foreseeable consequence" of Chrust's misrepresentation. *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1495 (2d Cir.1992) ("[I]n order to

establish loss causation, a plaintiff must prove that the damage suffered a foreseeable consequence of the misrepresentation.").

The Section 10(b) claim is accordingly dismissed.

### IV. *Chrust's Request to Strike Portions of the Complaint is Denied*

 Chrust has requested that several paragraphs of the complaint relating to events after April 13, 1999 be stricken as irrelevant to Greenberg's claims. This request is denied.

The Second Circuit has stated that "district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent or immaterial." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976); *see also Barcher v. New York Univ. School of Law,* 993 F.Supp. 177, 181 (S.D.N.Y.1998). Thus, a motion to strike should generally not be granted unless it can be shown that "no evidence in support of the allegation would be admissible." *Weiss v. La Suisse, Societe D'Assurances Sur la Vie,* 131 F.Supp.2d 446, 450 (S.D.N.Y.2001) (*quoting Lipsky,* 551 F.2d at 893).

Here, the allegations contained in the disputed paragraphs, although relating to events taking place after Greenberg contributed his 881,750 shares of Worlds.com stock back to the company, describe several instances of alleged misconduct which may help substantiate Greenberg's claims. In particular, the paragraphs detail the motivation behind the fraud that has been alleged and may provide other support as to Greenberg's surviving cause of action. Accordingly, there is no basis to strike portions of Greenberg's complaint.

### *Conclusion*

The motion to dismiss the causes of action for negligent misrepresentation, breach of fiduciary duty, and securities fraud are granted. The motion to dismiss the causes of action for common law fraud is granted as to future conduct, and is otherwise denied. Chrust's request to strike portions of the complaint is denied.

Greenberg is granted leave to replead within twenty (20) days hereof.

It is so ordered.