Steven A. GREENBERG, Plaintiff,

v.

Steven CHRUST, Defendant.

No. 01 Civ.10080(RWS).

United States District Court,
S.D. New York.

Jan. 20, 2004.

Olshan Grundman Frome Rosenzweig & Wolosky, New York, NY, for Plaintiff, Thomas J. Fleming, Kenneth J. Rubinstein, Michael B. Fisher, of counsel.

Graubard Miller, New York, NY, for Defendant, Edward H. Pomeranz, Nancy R. Sills, of counsel.

## OPINION

SWEET, District Judge.

Defendant Steven Chrust ("Chrust") renews a motion for sanctions against plaintiff Steven A. Greenberg ("Greenberg") pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927. Greenberg, in turn, moves for sanctions for defending this current motion under Fed.R.Civ.P. 11(c)(1)(A).

For the reasons set forth below, both Chrust's and Greenberg's motions for sanctions are denied.

### Prior Proceedings

This action was commenced on November 14, 2001, by the filing of a complaint alleging causes of action for (1) common law fraud; (2) securities fraud; (3) negligent misrepresentations; and (4) breach of fiduciary duty.

Discovery has been completed, and various motions have been disposed of. *See Greenberg v. Chrust,* 198 F.Supp.2d 578 (S.D.N.Y.2002) (*"Greenberg I"*); *Greenberg v. Chrust,* No. 01 Civ. 10080, 2002 U.S. Dist. LEXIS 21103 (Oct. 31, 2002) (*"Greenberg II"*); *Greenberg v. Chrust,* No. 01 Civ. 10080 (RWS), 2003 WL 367067 (S.D.N.Y. Feb. 10, 2003), 2003 U.S. Dist. LEXIS 2209 (*"Greenberg III"*); *Greenberg v. Chrust,* 282 F.Supp.2d 112 (2003) (*"Greenberg IV"*).

In December 2001, Chrust moved to dismiss Greenberg's complaint, and in *Greenberg I,* his motion to dismiss was granted in part and denied in part, stating:

> The allegations in the complaint regarding Chrust's misrepresentation of his employment background and business acumen (i.e. that he resigned his position at Winstar, that he successfully aided small companies, and that he managed a successful hedge fund) satisfy the requirements for a fraud claim. Greenberg has alleged that such representations were false and known to be false when made; that they were made to induce Greenberg to contribute his shares back to the company; and that Greenberg relied on these representations and was injured as a result.

> \* \* \*

> Greenberg has with sufficient particularity, specified the statements made by defendant which were fraudulent, identified who made the statements, when they were made (to plaintiff and others on various occasions prior to defendant's retention as chairman of the board) and why they were fraudulent.

*Greenberg I* at 582, 583.

In *Greenberg II,* Chrust's motion for summary judgment was denied "with leave granted to renew at the close of discovery" as there still existed disputed issues of material fact. *Greenberg II,* at *8.

In November 2002, Chrust moved for sanctions against Greenberg, and in *Greenberg III,* Chrust's motion for sanctions was denied with leave to renew, stating:

> A defendant's verdict, when the credibility of the parties is the principal issue, might well establish the basis for sanctions against Greenberg, given the record as it appears at this time. Under these circumstances it is prudent to defer this application for sanctions until the final disposition of this action.

> The motion for reconsideration is denied at this time with leave granted to renew upon the papers already submitted at the time the action is finally resolved.

*Greenberg III* at *1. At the close of discovery,[1] Chrust, renewed his motion for summary judgment and in *Greenberg IV*, decided on September 10, 2003, summary judgment was granted in his favor. Chrust now moves to renew his motion for sanctions against Greenberg. The instant motion was marked fully submitted on October 22, 2003.

### The Facts

The facts are set forth based upon the Local Rule 56.1 statements of the parties and supporting declarations.

Greenberg, a New York resident, was one of three founders of Worlds Acquisition Corp., a corporation formed in 1997 for the purpose of acquiring Worlds, Inc. In December 1997, a three-way merger between Worlds Acquisition Corp., Worlds, Inc., and Academic Computer Systems, Inc., was effected. The surviving corporation was called Worlds, Inc. On November 9, 1999, Worlds, Inc. changed its name to Worlds.com ("Worlds").

Chrust, a Connecticut resident, participated as an investor in the financing related to the merger. He was employed as the vice-chairman of Winstar Communications, Inc. ("Winstar"), a publicly traded company engaged in the telecommunications industry. In December 1998, Chrust contacted Greenberg to inquire about possible involvement with Worlds.

Chrust and Greenberg met on at least six occasions between January 3, 1999 and April 8, 1999, during which Chrust made certain representations which form the basis for the instant action. According to Greenberg, Chrust stated that he had resigned voluntarily as Winstar's Vice President and member of the board, that he was no longer employed or affiliated with Winstar, that he had worked successfully with small companies in the past aiding in their financing, development, and growth, and that had managed a hedge fund with a growth rate of 25% annually, in which he personally invested approximately $10 million.

Pursuant to these discussions, Greenberg agreed to support Chrust as chairman of World's board of directors. On March 23, 1999, Worlds entered into an agreement with SGC Advisory Services, Inc. ("SGC"), whose President was Chrust, under which SGC was retained as a consultant and Worlds became obligated to appoint Chrust as chairman of its board of directors (the "SGC Agreement"). The agreement provides that SGC and Chrust could consult with other businesses, without limitation, while SGC was consulting with Worlds. Neither Greenberg nor Chrust was a direct party to this agreement.

On April 13, 1999, Greenberg and two other Worlds shareholders entered into an agreement in which they agreed to contribute certain amounts of their Worlds shares back to Worlds (the "Contribution Agreement"). Greenberg agreed to contribute 881,750 shares of his Worlds stock back to Worlds.

Prior to entering into the Contribution Agreement, Greenberg owned at least 3,818,250 shares of Worlds common stock. (Greenberg alleges ownership of 4.7 million shares).

Chrust entered into an agreement to continue rendering consulting assistance to Winstar for a period of one year after his resignation as Vice–Chairman.

---

1. Additional discovery produced included Greenberg's deposition, Chrust's deposition, the deposition of non-party witness William Rouhana Jr., and the minutes of Winstar's Board of Directors.

Chrust became chairman of Worlds which thereafter became insolvent. Chrust has extensive experience in evaluating investment opportunities in public and private technology and worked with telecommunications companies, most, if not all, of which are bankrupt or on the verge of bankruptcy and are out of business according to Greenberg.

## I. *Motion for Sanctions Against Greenberg*

### A. *Applicable Standards*

Chrust seeks post-judgment sanctions against Greenberg and his counsel, pursuant to Rule 11, 28 U.S.C. § 1927, and the inherent equitable power of the court.

### 1. *Rule 11*

■■■ A violation of Rule 11 is triggered "when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985) (emphasis in original). The test is whether an attorney's conduct was "objectively reasonable at the time he or she signed the pleading, motion, or other paper." *Mopaz Diamonds, Inc. v. Institute of London Underwriters*, 822 F.Supp. 1053, 1057 (S.D.N.Y.1993). Rule 11 sanctions are only appropriate "where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands . . . ." 762 F.2d at 254; *see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir.1999). This is the case as

sanctions must be imposed carefully lest they chill the creativity essential to the evolution of the law. *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 659 (S.D.N.Y.1996) (*citing Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994)).

### 2. *28 U.S.C. § 1927*

■■ 28 U.S.C. § 1927 provides:

Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions under 1927 can be imposed exclusively against the offending attorneys, not their clients, and "[b]ad faith is the key element in the imposition of § 1927 sanctions. . . ." *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 48 (S.D.N.Y.1993). *See also First Interregional Equity Corp. v. Haughton*, 1994 WL 364038, at *4 (S.D.N.Y. July 13, 1994) ("[I]mposition of sanctions under Section 1927 'is highly unusual and requires a clear showing of bad faith'") (*quoting West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir.1971)). "[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999) (*quoting Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir.1996)).

### 3. *Court's Equitable Power*

■■ Additionally, as the Supreme Court established in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), courts have the "inherent power to impose attorney's fees as a

sanction for bad-faith conduct," and this sanction can be imposed directly on the parties. However, "[a] court must, of course, exercise caution in invoking its inherent power." *Id.* It is in cases when "neither the statute.nor the Rules are up to the task, [that] the court may safely rely on its inherent power." *Id.*

Sanctions under the court's inherent power are appropriate when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46, 111 S.Ct. 2123 (*quoting Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). This is the case when a party's "entire conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court," *Id.* at 51, 111 S.Ct. 2123, and when a party attempts through "tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance," *Id.* at 41, 111 S.Ct. 2123.

## B. *Greenberg Did Not Act in Bad Faith*

In this case, sanctions under Rule 11, 28 U.S.C. § 1927, or the Court's equitable power are inappropriate as Greenberg did not act in bad faith. Greenberg had a good faith basis for his belief that there were suspicious circumstances surrounding Chrust's departure from Winstar. One third party source notified him that Chrust was thrown off Winstar's Board of Directors. Additionally, Chrust failed to apprise Greenberg of his continued affiliation with Winstar and failed to disclose it in World's SEC filing announcing his retention. It was further not so clear that Greenberg's statements regarding his prior business successes were merely opinion and thus non-actionable. As explained in *In re American Bank Note Holographics, Inc. Secs. Litig.*, 93 F.Supp.2d 424 (S.D.N.Y.2000), statements about a company's value with sufficient specificity are actionable. In *Greenberg II*, this question was reserved "because of issues of disputed material fact." *Greenberg II*, at *8.

In this case, many of the facts necessary to demonstrate fraud were located within the exclusive control of Chrust, Chrust's counsel, and Chrust's associates. There thus existed issues of fact that could not be resolved until the depositions of Chrust and William Rouhana, Jr. ("Rouhana"), Winstar's former Chairman and Chief Executive Officer, were taken.[2] As recognized in *Greenberg II*, disputed issues of material fact included:

> the circumstances of Chrust's departure from Winstar, the representations Chrust made regarding his employment status prior to his retention by Worlds, his work with various small companies, and involvement with a hedge fund prior to his retention by Worlds, the provision and availability of certain materials regarding Chrust's background, and the cause for movement in World's stock

2. Rouhana's affidavit was inadequate in resolving these questions, particularly as Chrust's counsel also represents Rouhana in connection with the subpoena issued to him in this action. *See Rosen v. Trans World Airlines, Inc.*, 94 Civ. 0682 LMM, 1997 WL 107640, at *1 (S.D.N.Y. Mar. 10, 1997), 1997 U.S. Dist. LEXIS 2568, at *2 (denying summary judgment where "plaintiff has not yet been given the opportunity to depose [defendant's] employee on the basis of whose affidavit summary judgment is sought."); *G–I Holdings, Inc. v. Baron & Budd*, 01 Civ. 0216 (RWS), 2002 WL 31251702 (S.D.N.Y. Oct. 8, 2002), 2002 U.S. Dist LEXIS 19006 (refusing to consider defendant's motion for summary judgment where parties who submitted affidavits on behalf of defendant had not been deposed by plaintiff.).

price between March 23, 1999 and April 13, 1999.

*Greenberg II,* at *6–7.[3]

Chrust faults Greenberg for failing to investigate the truth and accuracy of hearsay and rumor in pursuing his claims. However, Greenberg constantly sought further discovery and made every attempt to depose Rouhana in order to verify his claims. Chrust himself cites Greenberg's "continued effort to obtain third party discovery." (Chrust Mem. at 2.) It was Chrust who sought to limit discovery and objected to Rouhana's deposition. Rouhana's deposition, which was fundamental to resolution of this action, only took place with the Court's intervention. This case thus differs significantly from *Miller v. Schweickart,* 413 F.Supp. 1059, 1061 (S.D.N.Y. 1976), cited by Chrust, where the plaintiffs pursued a "shotgun approach" to naming defendants and "[e]xtensive discovery . . . emphasized that the charges against [a particular defendant] were groundless."

■■■■■■ Chrust further points to Greenberg's pre-litigation letter as indicative of his improper purpose. However, Greenberg's letter did not present empty threats. Rather, he had a good faith belief that his claim had merit and that additional law suits could be brought against Chrust, as he demonstrated by subsequently filing suit and vigorously defending against Chrust's motion to dismiss and motions for summary judgment (twice successfully). Greenberg's letter merely represents his attempt to reach a settlement and avoid the time and expense of litigation. Such attempts at settlement are protected. *Revson v. Cinque & Cinque,* 221 F.3d 71, 79–80 (2d Cir.2000) (refusing to impose sanctions against plaintiff's counsel for issuing a settlement letter which employed offensive language and threatened to tarnish defendant's reputation); *Sussman v. Bank of Israel,* 56 F.3d 450 (2d Cir.1995) (reversing sanctions imposed for pre-litigation letter threatening suit). As the Second Circuit explained, "prelitigation letters airing grievances and threatening litigation if they are not resolved are commonplace, sometimes with salutary results, and do no suffice to show an improper purpose if nonfrivolous litigation is eventually commenced." *Id.* at 459.

### C. *Greenberg Did Not Improperly Delay Resolution*

■■■■ Sanctions are further inappropriate here as Greenberg did not delay resolution of this action. As explained in *United States v. Int'l Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991), section 1927 "looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." In fact, the evidence shows that Greenberg eagerly sought discovery to further investigate his claims, while it was Chrust that delayed and filed premature motions.

The instant case is very different from *Pentagen Techs. Int'l Ltd. v. United States,* 172 F.Supp.2d 464 (S.D.N.Y.2001), cited by Chrust in support of sanctions. In *Pentagen,* defendants brought a motion for sanctions after the plaintiff filed a ninth action related to alleged violations of copyright and trademark laws. The plaintiff proceeded with this action, despite adverse rulings in his first eight suits and

---

**3.** Chrust twice unsuccessfully tried to dismiss Greenberg's fraud claim. Chrust's motion to dismiss was denied since Greenberg adequately pled a cause of action for common law fraud, and Greenberg's initial summary judgment motion was denied since Greenberg demonstrated issues of material fact pertinent to his fraud claim.

warnings by two separate district courts that his claim was "frivolous on its face." *Id.* at 459. Moreover, the plaintiff was barred by statute from even maintaining an action against the government, and he persisted in actions against other defendants under statutes that contained no private right of action. Here, Greenberg's claim had been properly pled, and it survived an initial summary judgment motion. Furthermore, this was the first and only action Greenberg brought against Chrust.

## II. *Motion for Sanctions Against Chrust*

Chrust's motion to impose sanctions in this case also cannot be characterized as "patently" unreasonable and having "absolutely no chance of success." *Eastway,* 762 F.2d at 254. Greenberg won his summary judgment motion as neither Chrust's departure from Winstar, his continued affiliation with Winstar, nor his business and employment background could provide the basis of a fraud claim. *See Greenberg IV.*

### *Conclusion*

For the reasons set forth, Chrust's and Greenberg's motions for sanctions are denied.

Enter judgment on notice.

It is so ordered.