**BARRON PARTNERS, LP, Plaintiff,**

v.

**LAB123, INC. et al., Defendants.**

**No. 07 Civ. 11135(JSR).**

United States District Court,
S.D. New York.

Jan. 20, 2009.

Barry R. Lax, Esq., David Rich, Esq., Lax & Neville LLP, New York, NY, for Plaintiff.

Janene M. Marasciullo, Esq., Kaufman, Dolowich Voluck & Gonzo LLP, Woodbury, NY, New York, NY, for Defendants.

*MEMORANDUM ORDER*

JED S. RAKOFF, District Judge.

On August 27, 2008, defendants Biosafe Laboratories, Inc., Biosafe Medical Technologies, Inc. (collectively, "Biosafe"), Lab123, Inc. ("Lab123"), Henry A. Warner, and Robert Trumpy answered the Amended Complaint in the above-captioned action, and filed two counterclaims alleging that plaintiff Barron Partners, LP ("Barron") (1) fraudulently induced Lab123 to execute a Stock Purchase Agreement ("SPA") by failing to disclose its managing partner's prior criminal record and related prior misconduct, or (2) at a minimum, engaged in negligent misrepresentation by failing to disclose same. Barron now moves, pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b), to dismiss defendants' fraudulent inducement and negligent misrepresentation counterclaims.

According to defendants' pleadings, Biosafe's CEO Henry Warner and Barron's CEO Andrew Worden began in May 2006 discussing a potential business deal pursuant to which Barron would invest in a new entity, Lab123. Defendants' First Amended Answer, Affirmative Defenses and Counterclaims ("Answer") ¶¶ 239–40, 242. Worden insisted that Lab123 be formed as a public company, but Warner responded that he had no prior experience in creating or managing public companies. *Id.* ¶¶ 242–43. In response, Worden assured Warner that Barron, a private investment fund, was an "expert" in taking companies public and would assist defendants in the creation of a new publicly traded company. *Id.* ¶¶ 244, 279–80. Thereafter, in a May 11, 2006 e-mail, Worden referred Warner to Barron's website, which noted that Barron "assists and invests in private companies that commit to immediately go public." *Id.* ¶¶ 245, 247. The website also stated that Barron helps companies go public "by introducing them to proven professionals including lawyers and accountants to navigate through the going public process cost effectively and painlessly," *id.*, and that Worden had "over 20 years of experience founding, managing, planning, analyzing, and investing with public companies." *Id.* ¶ 248.

Defendants allege that, based on Barron's claimed expertise, defendants relied on Barron to assist Lab123 in going public and to identify experts to assist in the process, including the law firm Gusov Ofsink, LLC and the accounting firm Marcum & Kliegman, LLP. *Id.* ¶¶ 254–58, 280–86. Barron did not tell Warner, and Barron's website did not disclose, however, that (1) Worden engaged in a free-riding trading scheme in 1989; (2) Worden entered into a consent decree with the SEC in 1992 because of that scheme; and (3) Worden pleaded guilty in 1995 to one count of wire fraud relating to that scheme. *Id.* ¶¶ 249–53; Ex. 3 at 2, 7; Ex. 4 at 1. Defendants contend that they did not learn of Worden's criminal record until after Barron commenced this lawsuit, *id.* ¶ 253, and that they would not have executed the SPA if they had known of Worden's criminal history. *Id.* ¶¶ 273, 275. Although, Barron, as a result of entering into the SPA, invested $2 million in Lab123, nevertheless defendants contend that, because of the alleged fraudulent inducement and/or negligent misrepresentation, defendants incurred substantial damages, in excess of $1 million, including the cost of incorporating Lab123 and the cost of hiring and paying Lab123 employees. *Id.* ¶¶ 276, 291, 293.

Turning, first, to defendants' claim for fraudulent inducement, "[a]t the very threshold" defendants must allege a misrepresentation or material omission on which they relied that induced defendants to enter into an agreement. *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308,

318, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). Here, the alleged misrepresentation/omission is the failure to disclose Worden's prior criminal conviction and related misconduct. Nondisclosure only becomes actionable, however, where a defendant has a duty to disclose, *see, e.g., E.B. v. Liberation Publs., Inc.,* 7. A.D.3d 566, 567 (2d Dep't 2004), which can arise where there is a confidential or fiduciary relationship between the parties. *County of Westchester v. Welton Becket Assoc.,* 102 A.D.2d 34, 50–51, 478 N.Y.S.2d 305 (2d Dep't 1984).

■ Ordinarily, however, no such relationship exists between the sellers and buyers of corporate stock when dealing at arms length. 2 New York Pattern Jury Instructions 166 (2d ed. 2008). *See Rothmiller v. Stein,* 143 N.Y. 581, 595, 38 N.E. 718 (1894); *Lane v. McCallion,* 166 A.D.2d 688, 691, 561 N.Y.S.2d 273 (2d Dep't 1990) ("As there was no confidential relationship between the sellers of the corporation stock and the plaintiff, under these circumstances, their mere nondisclosure of a material fact does not constitute fraud"); *Elliott v. Qwest Communications Corp.,* 25 A.D.3d 897, 898, 808 N.Y.S.2d 443 (3d Dep't 2006) (no fiduciary relationship existed between plaintiff investor and defendant "because [plaintiff's] acceptance of the stock purchase offer was a simple business transaction between a potential investor and a company soliciting such investors").

Here, Barron and Lab123 were, respectively, buyer and seller of corporate stock, and were thus parties to a transaction that ordinarily would not give rise to a confidential or fiduciary relationship. By the express terms of the SPA, the only action Barron agreed to undertake was to purchase Lab123 stock for $2 million, and its only affirmative representation was that, at the time of the parties' transaction, Lab123 was already "a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware." *See* Declaration of David S. Rich ("Rich Decl.") Ex. C §§ 2.1(a), 4.1.[1] On these facts, defendants' acceptance of Barron's offer to buy stock in Lab123 was no more than a "simple business transaction between a potential investor and a company soliciting such investors." *Elliott,* 25 A.D.3d at 898, 808 N.Y.S.2d 443.

■ Moreover, the primary statements allegedly giving rise to a confidential or fiduciary relationship between the parties were made on Barron's website. Answer ¶¶ 245–50. Patently, these statements were not confidential; and if such widely-disseminated and readily available statements were sufficient to give rise to a fiduciary relationship, the exception would swallow the rule that no fiduciary relationship exists between the sellers and buyers of corporate stock, and virtually every investor would owe a fiduciary duty to the companies in which it invests. *Cf. McGill v. GM Corp.,* 231 A.D.2d 449, 449, 647 N.Y.S.2d 209 (1st Dep't 1996) (noting that "mass communications" are insufficient to establish privity between parties). Likewise, although defendants allege that Barron introduced them to "proven professionals," including lawyers and accountants, defendants have failed to point to any authority holding that a buyer of corporate stock—by referring the seller to particular professionals—enters into a special relationship of trust or confidence with the seller.

---

1. The SPA was incorporated by reference into defendants' Counterclaims, was relied upon by defendants in asserting such claims, and is thus properly considered on Barron's motion to dismiss. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

*Greenberg v. Chrust* is instructive. In that case, plaintiff, the largest shareholder in a corporation, met with defendant investor "on at least six occasions" to discuss the development of that corporation's business plan and to assist in that corporation's financing and business development. 198 F.Supp.2d 578, 580 (S.D.N.Y.2002). During the course of these meetings, defendant made a variety of "specific representations ... concerning his background and business background," advised plaintiff that he would undertake search efforts for a new president and CEO for the corporation, and promised plaintiff that he would raise "the necessary substantial capital to permit the company to pursue its business plan and objectives aggressively." *Id.* As a result of defendant's representations, plaintiff alleged that he "developed a level of trust and confidence" in defendant, agreed to transfer to the corporation nearly 900,000 shares of common stock that he individually owned, and supported defendant's appointment as chairman of the corporation's board of directors. *Id.* Based on these facts, the court concluded that no fiduciary or special relationship arose from the parties' negotiations, holding that the parties were merely engaged in an arms'-length business relationship. *Id.* At 585. The Court further noted that the fact that defendant eventually became a director of the corporation "in and of itself does not give rise to a fiduciary obligation." *Id.* at 585–86 (dismissing plaintiff's negligent misrepresentation claim).

Here, the nature of the parties' alleged relationship is even more tenuous than that alleged in *Greenberg,* and Barron's identification of "professionals" to assist defendants in creating Lab123 and taking it public pales in comparison to the efforts made by defendant in that case. Indeed, as in *Greenberg,* defendants have failed to allege any facts sufficient to demonstrate that Barron possessed any "special" or "unique" experience that differentiated it from any other investment fund, or that Barron would have been aware of any use to which information concerning Worden's guilty plea would be put. Thus, because defendants have failed to allege any facts sufficient to demonstrate that the relationship between the parties was anything other than arm's-length, defendants' fraudulent inducement claim, premised on nondisclosure, must be dismissed with prejudice.

■ Independently, defendants' fraudulent inducement claim also must be dismissed because the alleged omission was immaterial. An omission of fact is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question," or "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." *Chase Manhattan Bank v. Motorola, Inc.,* 184 F.Supp.2d 384, 394 (S.D.N.Y.2002) (citation omitted). Here, defendants in essence argue that Worden's consent decree and guilty plea would have been highly relevant in deciding whether to accept Barron's $2 million investment, because a prospective business partner's character for truthfulness is essential to a productive business relationship.

On its face, however, the consent decree expressly provides that Worden neither admitted nor denied the allegations contained in the Securities and Exchange Commission's complaint. *See* Answer Ex. 4. Accordingly, because Worden's consent decree was not a "true adjudication [ ] of the underlying issues," *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893–894 (2d Cir.1976), it had no bearing on

his character for truthfulness, and Barron's failure to disclose its existence cannot, in these circumstances, be viewed as a material omission. *See Singleton v. New York,* 632 F.2d 185, 193 (2d Cir.1980) ("An adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt").

■ Nor have defendants alleged any facts sufficient to support an inference that Worden's guilty plea was material to defendants' decision to accept Barron's $2 million investment. As an initial matter, Worden's 1995 plea related to conduct that occurred approximately 17 years before Barron's alleged nondisclosure and the parties' execution of the SPA. Given the temporal remoteness of these events, Worden's plea would have been, at most, of marginal relevance. More fundamentally, although the prior guilty plea of an issuer may be relevant in some circumstances to a reasonable investor when evaluating the "total mix of information" available concerning a company, *Basic Inc. v. Levinson,* 485 U.S. 224, 232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (citation omitted), the converse is not true; that is, a prior conviction of someone who is ready to invest in the defendants' company would not have any relevance whatsoever to the defendant issuer, who relies on the investor for money and (as alleged here) expertise, but not on the investor's integrity, character for truthfulness, or representations concerning its past dealings. *Cf. Consol. Gold Fields, PLC v. Anglo American Corp. of South Africa,* 713 F.Supp. 1457, 1470 (S.D.N.Y.1989) (when assessing the mate-

riality of an alleged omission, courts look, *inter alia,* to whether a company has provided "information as to material facts in a format from which a reasonable investor could reach his own conclusions as to the risks of the transaction").

■ In this respect, it is clear from the face of defendants' counterclaim that defendants entered into the SPA based on Barron's supposed expertise, and not based on any representations concerning— or understanding of—Barron's integrity or character for truthfulness. Indeed, defendants' counterclaim is entirely bereft of any facts demonstrating that knowledge of Worden's guilty plea would have raised any legitimate concerns regarding the risks of accepting Barron's investment. The irrelevance of Worden's plea to defendants' decision to accept Barron's investment is further underscored by the fact that the SPA recites no representations or warranties regarding the backgrounds of Worden or any other of Barron's partners or key personnel. *See* Rich Decl. Ex. C §§ 5.1–5.10.[2]

■ Finally, and critically, defendants have failed to point to any caselaw standing for the proposition that a decade-old conviction of the managing partner of an investor would be material to a seller of stock, and the caselaw upon which defendants rely is inapposite. In *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.,* for instance, the Second Circuit considered securities claims brought by an investor, not an issuer, and did not directly address the materiality of a defendant's association with a person

---

2. Defendants allege that Barron sought information regarding the criminal history of Lab123's officers and directors, Answer ¶¶ 263–68, and argues that this somehow demonstrates the materiality of Worden's guilty plea. As noted above, however, an investor and an issuer of stock stand in demonstrably different positions, and information that might be material to a reasonable investor would not necessarily be material to the seller of the stock.

barred from the securities industry. 343 F.3d 189, 191–92, 196 (2d Cir.2003). Likewise, the court in *Drobbin v. Nicolet Instrument Corp.* merely held that the disclosure made by defendants concerning a prior conviction was sufficient for purposes of federal securities laws, and did not reach—nor address—the materiality of the information that was disclosed. 631 F.Supp. 860, 888 (S.D.N.Y.1986). Accordingly, the fraudulent inducement claim must also be dismissed, with prejudice, because the alleged nondisclosure is immaterial.[3]

■■■■ Turning to defendants' counterclaim for negligent misrepresentation, that must be dismissed for many of the same reasons as their counterclaim for fraudulent inducement. The elements of a negligent misrepresentation claim under New York law are that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 20 (2d Cir. 2000).

■■■■ As an initial matter, "[u]nder New York law, a plaintiff may not recover for negligent misrepresentation in the absence of a special relationship of trust or confidence between the parties." *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 158 (2d Cir.1995). Here, as noted above, defendants' own pleadings make plain that they cannot allege facts sufficient to demonstrate that a "confidential" or "special" relationship existed between Barron and Lab123.

Accordingly, because Barron and Lab123 were merely a buyer and seller of corporate stock, defendants' claim for negligent misrepresentation must be dismissed. *See Phillips v. Am. Int'l Group, Inc.,* 498 F.Supp.2d 690, 696 (S.D.N.Y. 2007) (dismissing plaintiff's negligent misrepresentation claim, where the complaint failed to allege "any facts suggesting that the relationship between plaintiff and defendants was anything other than arm's-length").

■■■■ Moreover, it is well-established that a claim for negligent misrepresentation may stand only "where there is actual privity of contract between the parties or a relationship so close as to approach that of privity." *Ossining Union Free Sch. Dist. v. Anderson,* 73 N.Y.2d 417, 424, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989). Here, as noted above, the only parties to the SPA were Barron and Lab123, and defendants have been unable to demonstrate the

---

**3.** Defendants Biosafe, Warner, and Trumpy cannot maintain a fraudulent inducement claim against Barron for the separate and additional reason that Barron and Lab123 are the only parties to the SPA. Under New York law, in order to state a claim for fraudulent inducement, "the person making the representations must be, or acting on behalf of, the other party to the contract. Fraud by a third party is not effective to vitiate contractual obligations." *Nat'l Union Fire Ins. Co. v. Worley,* 257 A.D.2d 228, 233, 690 N.Y.S.2d 57 (1st Dep't 1999); *see Navigant Consulting, Inc. v. Kostakis,* No. 07–CV–2302, 2007 WL 2907330, at *3 (S.D.N.Y. Oct. 4, 2007) ("To state a claim for fraudulent inducement [plaintiff] must show," *inter alia,* "a knowingly false representation of a material fact by the other party, or a person acting on behalf of the other party, to the contract"). Here, because the only parties to the SPA are Barron and Lab123, Biosafe's, Warner's, and Trumpy's fraudulent inducement claim must, again, be dismissed.

existence of any relationship "so close as to approach that of privity." Accordingly, defendants Biosafe's, Warner's, and Trumpy's claim for negligent misrepresentation must be dismissed for this separate reason.

For all of the foregoing reasons, any amendment to defendants' counterclaims would be futile, and both counterclaims must be, and hereby are, dismissed in their entirety, with prejudice.[4]

SO ORDERED.

4. The Court therefore need not consider Barron's alternative arguments as to why defendants' counterclaims must be dismissed.