**In re Emily Albrink Fowler HARTIGAN.**

No. 04–03–00086–CV.

Court of Appeals of Texas, San Antonio.

April 9, 2003.

Rehearing Overruled May 15, 2003.

Emily Albrink Fowler Hartigan, Boerne, pro se.

Christina Mitchell–Tomasini, Law Office of Christina Mitchell–Tomasini, Boerne, Ralph E. Williamson, Law Office of Ralph E. Williamson, San Antonio, for Appellant.

James N. Higdon, Amy Geistweidt, Higdon, Hardy & Zuflacht, L.L.P., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

Opinion by CATHERINE STONE, Justice.

This is an original proceeding in which Emily Hartigan seeks mandamus relief from the trial court's order compelling arbitration of all claims by and against the real parties in interest, attorneys Christina Mitchell–Tomasini, Ralph Williamson, James Higdon, and Amy Geistweidt, and the law firm of Higdon, Hardy, and Zuflacht, L.L.P. Hartigan's petition presents five issues: (1) whether Hartigan was fraudulently induced to sign the contract containing the arbitration clause; (2) whether the arbitration provision violates Rule 1.08(g) of the Texas Disciplinary Rules of Professional Conduct; (3) whether legal malpractice is a claim for personal

injury excluded from the scope of the Texas Arbitration Act by section 171.002(a)(3) of the Texas Civil Practice and Remedies Code; (4) whether legal malpractice is outside the scope of the arbitration agreement; and (5) whether the trial court abused its discretion in ruling that non-signatory parties could enforce the arbitration agreement.

We have determined that Hartigan's petition for writ of mandamus should be denied in part and conditionally granted in part. We hold the trial court clearly abused its discretion when it allowed non-signatories—Williamson and Tomasini—to enforce the arbitration agreement. However, we do not believe the trial court abused its discretion by compelling Hartigan to arbitrate with Higdon, Geistweidt, and Higdon, Hardy & Zuflacht, L.L.P.

## BACKGROUND

Hartigan originally retained Williamson to represent her in a divorce proceeding, but was forced to find new counsel when Williamson was injured in an automobile accident. Hartigan subsequently retained Tomasini to represent her. Unfortunately, Tomasini also had health problems, so Hartigan was once again forced to find new counsel. Hartigan hired Higdon, Geistweidt, and their law firm, Higdon, Hardy & Zuflacht, L.L.P. (collectively "HHZ") to replace Tomasini.

Hartigan signed a contract for legal services with HHZ. This contract contained an arbitration provision stating:

> Should any dispute arise regarding the terms or conditions of this Employment Agreement, including but not limited to the services rendered or the fees, costs, or expenses payable thereunder, all parties hereby agree the dispute shall be referred to *binding arbitration* by an arbitrator appointed by the then Presiding District Judge of Bexar County,

Texas. The provisions of Chapter 171 of the Texas Civil Practice and Remedies Code shall govern any proceedings under this clause to the extent the parties cannot otherwise agree.

Although Hartigan signed the HHZ agreement containing this arbitration provision, she did not sign any agreement with Williamson or Tomasini requiring her to arbitrate.

After Hartigan's divorce became final, Williamson and Tomasini filed suit against Hartigan for attorney's fees. Hartigan filed a counterclaim against Williamson and Tomasini for legal malpractice. Hartigan brought in HHZ as a third party defendant. HHZ responded to Hartigan's claim by filing its own counterclaim against Hartigan for attorneys fees. Shortly thereafter, HHZ moved to compel arbitration pursuant to the arbitration agreement signed by Hartigan. After a hearing, the trial court granted HHZ's motion, sending all parties to arbitration, including non-signatories Williamson and Tomasini.

## STANDARD OF REVIEW & LAW OF ARBITRATION

■ A party seeking to compel arbitration must: (1) establish the existence of a valid, enforceable arbitration agreement; and (2) show that the claims asserted fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex.App.-San Antonio 2001, orig. proceeding [leave denied]); *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex.App.-San Antonio 2000, pet. dism'd by agr.). The party seeking arbitration has the initial burden to present evidence of an arbitration agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573; *In re Koch Indus., Inc.*, 49 S.W.3d at 444. Once the existence of an arbitration agreement has been estab-

lished, a presumption attaches favoring arbitration. *Gonzalez,* 18 S.W.3d at 689. The burden then shifts to the opposing party to present evidence that the agreement was procured in an unconscionable manner or induced or procured by fraud or duress; that the other party has waived its right to compel arbitration under the agreement; or that the dispute falls outside the scope of the agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d at 573; *In re Koch Indus., Inc.,* 49 S.W.3d at 444; *Gonzalez,* 18 S.W.3d at 689.

■ This court has held that the proper standard for reviewing a trial court's determination regarding the existence of an arbitration agreement is abuse of discretion. *In re Koch Indus., Inc.,* 49 S.W.3d at 444; *ANCO Ins. Services of Houston, Inc. v. Romero,* 27 S.W.3d 1, 5 (Tex.App.-San Antonio 2000, pet. denied); *Hardin Const. Group, Inc. v. Strictly Painting, Inc.,* 945 S.W.2d 308, 312 (Tex. App.-San Antonio 1997, orig. proceeding). Because mandamus will issue only to "correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law," Hartigan must demonstrate that either: (1) the trial court could reasonably have reached only one decision concerning the resolution of certain factual issues or matters committed to the trial court's discretion; or (2) the trial court failed to analyze or apply the law correctly. *Walker v. Packer,* 827 S.W.2d 833, 839–840 (Tex.1992). A party who is compelled to arbitrate without having agreed to do so has no adequate remedy by appeal and is entitled to mandamus relief. *In re Godt,* 28 S.W.3d 732, 738 (Tex.App.-Corpus Christi 2000, orig. proceeding).

## HHZ CLAIMS

■ The parties do not dispute that an arbitration agreement existed between HHZ and Hartigan. HHZ has therefore satisfied its initial burden of establishing its right to arbitration. To overcome the application of the arbitration clause, Hartigan must establish either some ground for revocation of their arbitration agreement or demonstrate that her claims against HHZ fall outside the scope of the agreement. In her petition, Hartigan argues three grounds for revocation of the arbitration agreement: (1) fraudulent inducement; (2) failure to comply with the requirements ·of section 171.002(c) of the Texas Civil Practice and Remedies Code; and (3) violation of Rule 1.08(g) of the Texas Disciplinary Rules of Professional Conduct.[1] Hartigan also asserts that her legal malpractice claim falls outside the scope of the parties' arbitration agreement.

### *Fraudulent Inducement*

■ In her fourth issue, Hartigan complains the trial court erred by failing to find that she was fraudulently induced to sign the contract containing the arbitration clause. With respect to this issue, however, Hartigan has failed to provide the court with either substantive analysis of her legal contentions or citation to authority supporting her contentions. *See* TEX. R.APP. P. 52.3(h). Because the Rules of Appellate Procedure obligate one seeking mandamus relief to include in the petition "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record," we hold Hartigan waived this conten-

---

1. At oral argument, Hartigan also argued that forcing her to arbitrate was against public policy because it denied her of her right to a trial by jury. As we noted in *Gonzalez,* "well established case law favors mandatory arbitration and ... arbitration does not deny parties their right to a jury trial, as a matter of law." *Gonzalez,* 18 S.W.3d at 691.

tion. *See id.* Hartigan's fourth issue is overruled.

### Texas Disciplinary Rule 1.08(g)

■ In her third issue, Hartigan contends the arbitration provision prospectively limits HHZ's liability for malpractice, and thus violates Rule 1.08(g) of the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Disciplinary R. Prof. Conduct. 1.08(g), *reprinted in* Tex. Gov't.Code Ann., Tit. 2, Subtit. G, App. A (Vernon 1998). Disciplinary Rule 1.08(g) provides that "[a] lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement." *Id.*

Presently, there are no ethics opinions from the State Bar of Texas on the subject of attorney-client arbitration agreements. There is, however, Formal Opinion 02–425 from the American Bar Association Committee on Ethics and Professional Responsibility. *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 02–425 (2002). According to the ABA, "mandatory arbitration provisions are proper unless the retainer agreement insulates the lawyer from liability or limits the liability to which she otherwise would be exposed under common or statutory law." *Id.* Additionally, the ABA notes that "most state bar ethics committees have concluded that mandatory arbitration provisions do not prospectively limit a lawyer's liability, but instead only prescribe a procedure for resolving such claims." *Id.* Likewise, the arbitration clause at issue in this case neither insulates nor limits the liability to which HHZ would otherwise be exposed. Rather, the arbitration clause merely prescribes the procedure for resolving any disputes between attorney and client. Consequently, we hold the arbitration

clause does not violate Disciplinary Rule 1.08(g). Hartigan's third issue is overruled.

### Legal Malpractice Claim as a Personal Injury Claim

In her second issue, Hartigan contends the trial court erred in compelling her to arbitrate with HHZ because the arbitration provision fails to meet the requirements of section 171.002 of the Texas Civil Practice and Remedies Code. Section 171.002 provides in pertinent part that the arbitration provisions of the Code do not apply to a claim for personal injury unless "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." Tex. Civ. Prac. & Rem.Code Ann. § 171.002(a)(3), (c) (Vernon Supp.2003). Hartigan argues that because a claim for legal malpractice is a claim for personal injury, the arbitration clause is not valid because she was neither acting on the advice of counsel when she signed the agreement nor is the agreement signed by an attorney representing either party. *See In re Godt,* 28 S.W.3d at 739.

In *In re Godt,* Pamela Godt hired attorney Thomas Henry to represent her in a medical malpractice action. *Id.* at 734. Godt signed a contract for legal services with Henry which contained an arbitration provision. *Id.* After entering the attorney-client agreement, Henry allegedly failed to investigate Godt's claims. *Id.* Then, with only a couple of months left before her limitations period expired, Henry withdrew from the representation of Godt. *Id.* After filing a *pro se* petition, Godt filed suit against Henry for, among other things, legal malpractice. *Id.* at 735. Henry answered and moved to compel arbitration pursuant to their arbitration agreement. *Id.* Following a hearing, the trial court granted Henry's motion. *Id.*

The Thirteenth Court of Appeals reversed the trial court's decision because: (1) the parties' contingent fee contract for legal services was not signed by both Godt and Henry as required by TEX. GOV'T CODE ANN. § 82.065(a) (Vernon 1998); and (2) the parties' arbitration agreement did not conform to the requirements of section 171.002(c) of the Civil Practice and Remedies Code, *i.e.*, each party did not act on the advice of counsel when they signed the agreement and the agreement was not signed by an attorney representing either party. *Id.* at 738–39.

The Thirteenth Court of Appeals' holding in *Godt* is premised on its conclusion that Texas classifies a legal malpractice claim as a claim for personal injury for all purposes. *See In re Godt,* 28 S.W.3d at 738. In reaching this conclusion, the court relied on *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988), which held that "a cause of action for legal malpractice is in the nature of a tort and is governed by the two-year statute of limitations." The court also relied on *Sample v. Freeman,* 873 S.W.2d 470, 476 (Tex.App.-Beaumont 1994, writ denied) (holding legal malpractice action is a suit for personal injury and, thus, award of pre-judgment interest is appropriate in such cases) and *Estate of Degley v. Vega,* 797 S.W.2d 299, 302–03 (Tex.App.-Corpus Christi 1990, no writ) (classifying legal malpractice as a claim for personal injury so that a two-year statute of limitations applied). *Sample* and *Degley* both cited *Willis* for the proposition that a legal malpractice claim is a claim for personal injury, but that is not what the *Willis* court held. The court in *Willis* merely concluded that legal malpractice is a tort governed by a two-year statute of limitations.

This court has previously considered the issue of attorney-client arbitration provisions. *See Gonzalez,* 18 S.W.3d at 686–87.

In *Gonzalez,* a case concerning the same attorney, same contract, same complaint, and virtually the same fact pattern as presented in *In re Godt,* we reversed the trial court's denial of a motion to compel arbitration. *Id.* We did not, however, address whether a malpractice claim is a claim for personal injury excluded from the scope of the Texas Arbitration Act by section 171.002(a)(3). Therefore, we did not require the arbitration clause to comply with section 171.002(c). We ultimately compelled arbitration because we determined that: (1) the arbitration clause contained in the fee agreement survived the termination of the contract as a whole and was enforceable and binding on the parties; and (2) the matters in controversy fell within the scope of the arbitration agreement, as the factual allegations forming the basis of the malpractice claim arose from the attorney's representation of the client under the attorney-client contract. *Id.* at 690–92.

■ In the case at bar, we are specifically asked to consider whether a malpractice claim is a claim for personal injury excluded from the scope of the Texas Arbitration Act by section 171.002(a)(3). We hold that it is not. A plain reading of section 171.002 reveals that legal malpractice is not specifically prohibited from arbitration. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.002 (Vernon Supp.2003). Moreover, there is nothing within the legislative history for section 171.002 which shows that the Legislature intended for the personal injury provision to extend to legal malpractice claims. *See* Robert J. Kraemer, *Attorney–Client Conundrum: The Use of Arbitration Agreements for Legal Malpractice in Texas,* 33 ST. MARY'S L.J. 909, 934 (2002). Further, we respectfully disagree with the Beaumont and Corpus Christi courts' rulings in *Sample, Degley,* and *Godt.* Thus, we reject Hartigan's

contention that the arbitration clause is not valid because it does not meet the requirements of section 171.002(c). Hartigan's second issue is overruled.

### Scope of Arbitration Agreement

 Lastly, Hartigan contends that her legal malpractice claim falls outside the scope of the parties' arbitration agreement. We believe this argument lacks merit. The matters in controversy fall within the scope of the arbitration agreement because the factual allegations forming the basis of Hartigan's malpractice claim necessarily arose from HHZ's representation of Hartigan under the attorney-client contract. *See Gonzalez*, 18 S.W.3d at 691. Therefore, Hartigan's first issue is overruled.

### WILLIAMSON & TOMASINI

### Equitable Estoppel

 In her fifth issue, Hartigan contends Williamson and Tomasini cannot enforce the arbitration agreement in the HHZ–Hartigan contract because they are non-signatories to the agreement. A party that is not a "party to the arbitration agreement may not enforce the agreement's provisions unless the non-signatory falls into an exception, recognized under general equitable or contract law, that would allow such enforcement." *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding).

 Williamson and Tomasini contend that equitable estoppel allows them to enforce the arbitration agreement in the HHZ–Hartigan contract. Equitable estoppel allows a non-signatory to compel arbitration in two circumstances. *Tex. Enters., Inc. v. Arnold Oil Co.*, 59 S.W.3d 244, 249 (Tex.App.-San Antonio 2001, orig. proceeding). First, "[a]pplication of equitable

estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories." *Id.* Second, "equitable estoppel may be applied if the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the non-signatory." *Id.*

Here, Hartigan's pleadings do not allege "substantially interdependent and concerted misconduct" by the real parties in interest. Hartigan's original counterclaim merely lists how Williamson's and Tomasini's representation was deficient. For example, Hartigan alleges Williamson and Tomasini failed to obtain necessary discovery, plead the mandatory aspects of the divorce action, or keep her informed concerning their fitness to practice law. Hartigan's third party petition contains separate allegations of how HHZ's representation was deficient, claiming, for example, that HHZ failed to investigate, research case law, or write adequate briefs.

At oral argument, Williamson and Tomasini argued that the following language in Hartigan's third party petition demonstrates Hartigan alleged interdependent and concerted misconduct between real parties in interest:

> Thus both plaintiffs and third-party defendants have contributed both individually and severally to Hartigan's inability to obtain her files and inability to specify more fully the nature of their malfeasance.

While at first blush Hartigan's use of the term "severally" would imply some type of concerted action, the above-cited language does not pertain to acts supporting her underlying malpractice claims against real parties in interest. Rather, the language

relates to the narrow issue of delay and expense associated with Hartigan's alleged inability to timely retrieve her files from Tomasini and Williamson.

In addition to there being no allegation of direct or indirect interdependent and concerted misconduct in Hartigan's pleadings, there is nothing in the record to suggest that any of Hartigan's claims require her to rely on the terms of the HHZ contract to assert her claims against Williamson or Tomasini. Under these circumstances, compelling arbitration of claims by and against the non-signatories is improper.

### Necessary Joinder Under Rule 39

■■■ Williamson and Tomasini also argue that they were properly joined as parties under Rule 39 of the Texas Rules of Civil Procedure. Rule 39 provides, in pertinent part:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

TEX.R. CIV. P. 39(a). Williamson and Tomasini's argument is unpersuasive because, as noted above, Hartigan's malpractice claims against them are unrelated to her claims against HHZ. Therefore, Williamson and Tomasini's absence will neither prevent the court from granting complete relief to those already parties nor impair their ability to protect their interests or leave any persons already parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Accordingly, we hold that the trial court abused its discretion in compelling arbitration as to Williamson and Tomasini. Hartigan's fifth issue is sustained.

### CONCLUSION

Williamson and Tomasini may not rely on the HHZ–Hartigan contract to compel Hartigan to arbitrate her claims against them. Therefore, the trial court clearly abused its discretion in ordering that non-signatories—Williamson and Tomasini—could enforce the HHZ–Hartigan arbitration agreement. The trial court, however, did not abuse its discretion by compelling Hartigan to arbitrate with HHZ. Accordingly, we conditionally grant the petition for writ of mandamus in part, which will issue only if the trial court does not vacate that part of its order compelling Hartigan to arbitrate with Williamson and Tomasini.