**ABDEL HAKIM LABIDI, M.D., PH.D., Appellant**

**v.**

**Michael D. SYDOW; Sydow, McDonald, Kaiser & Ahmed, L.L.P.; Sydow & McDonald, L.L.P.; and Mohammed Sameer Ahmed, Appellees.**

**and**

**In re Abdel Hakim Labidi, M.D., Ph.D., Relator.**

Nos. 14–08–00527–CV, 14–08–00757–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 25, 2009.

Yusuf K. Abdullah, Dallas, TX, for appellants.

Billy Shepherd, Allison Standish Miller, Houston, TX, for appellees.

Panel consists of Justices GUZMAN and BOYCE and Senior Justice MIRABAL.*

## OPINION

EVA M. GUZMAN, Justice.

In this consolidation of an interlocutory appeal and a petition for writ of mandamus, Abdel Hakim Labidi challenges the district court's order compelling arbitration and staying proceedings in the trial court. We dismiss the appeal and deny the petition.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and relator Abdel Hakim Labidi retained the law firm of Sydow, McDonald, Kaiser & Ahmed, L.L.P. to represent him in a suit he filed against Exegenics, Inc. in federal court. Attorney Michael Sydow, a partner in the law firm, sent Labidi an engagement letter on May 16, 2005, and Labidi signed and returned the letter. The two-page agreement contained ten provisions, the last of which provided as follows:

> 10. *Binding Arbitration:* In the event of any disagreement over the terms or application of this agreement, or arising out of the attorney-client relationship

---

* Senior Justice Margaret G. Mirabal sitting by assignment.

established herein, the parties hereto will work together in good faith to resolve the disagreement. If they are not successful, then the parties agree to submit their disagreement to binding, nonappealable arbitration before one attorney knowledgeable in this type of litigation. Each party to this agreement agrees that other than through such arbitration he will not bring any claim or action against any other party to it regarding any such disagreement. Arbitration may be commenced by giving written notice of intent to arbitrate. The arbitrator will be selected by one of the retired judges listed on the attachment.

Sydow tried the case and obtained a judgment for Labidi in the amount of $674,871.00.

In 2006, the law firm split into two firms: Sydow & McDonald L.L.P. and Kaiser & Ahmed, L.L.P. Sydow's firm settled the outstanding judgment against Exegenics for approximately $638,000.00, and the funds were wired to the firm's trust account. Labidi then stated he would not settle the case for that amount, and Sydow's firm returned the settlement funds to the judgment debtor. According to Sydow, Labidi owed over $100,000 in legal fees at that time. After the law firm returned the settlement funds, Labidi contacted the judgment debtor directly; it is undisputed that he settled the case for $638,000. Thereafter, he refused to pay allegedly outstanding legal fees.

Sydow initiated arbitration in Harris County in 2007, whereupon Labidi filed suit in Dallas County against Sydow, all of the law firms, and Sydow's former partner, attorney Mohammed Sameer Ahmed. Labidi styled his allegations as claims for breach of fiduciary duty, breach of contract, fraud, legal malpractice, and negligence; he also sought a declaration that he owed no fees under the engagement letter. Labidi did not deny that he signed an engagement letter, but he asserted that the letter he signed contained no arbitration clause; according to Labidi, one or more of the defendants switched pages of the agreement after Labidi signed it.

The defendants moved to compel arbitration and to transfer venue. After the case was transferred to Harris County, the defendants reurged the motion to compel arbitration, and the trial court conducted an evidentiary hearing on May 16, 2008. Ahmed testified that he did not see Labidi sign the agreement, but he saw the agreement shortly after Labidi signed it and to Ahmed's knowledge, the pages of the agreement had not been changed. Ahmed further testified that in 2005, the Sydow law firm included arbitration clauses in all its engagement letters with all of its clients, and the engagement letter bearing Labidi's signature was the firm's standard form contract.

The trial court granted the motion to compel arbitration and stayed further proceedings in the trial court. Labidi challenges the trial court's ruling through an appeal as well as through a petition for writ of mandamus, and we have consolidated both proceedings.

## II. Issues Presented

In three issues, Labidi contends the trial court abused its discretion in granting the motion to compel arbitration because the arbitration provision is unenforceable due to (a) want or failure of consideration, (b) unconscionability and fraud in the inducement, and (c) public policy.

## III. Analysis

Labidi presents the same issues and arguments in both his petition for writ of mandamus and his brief in the interlocutory appeal, but he takes no position re-

garding whether the Federal Arbitration Act[1] or the Texas General Arbitration Act[2] applies. No argument or evidence was presented on the issue either in the trial court or in these proceedings. In any event, a trial court's order compelling arbitration and staying proceedings in the district court is not subject to interlocutory appeal under the federal[3] or state arbitration schemes.[4] *See Chambers v. O'Quinn,* 242 S.W.3d 30, 31–32 (Tex.2007) (per curiam) (explaining that neither the FAA nor the TAA allow interlocutory appeals from orders compelling arbitration); *Gathe v. Cigna Healthplan of Tex., Inc.,* 879 S.W.2d 360, 362–63 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (holding that an order compelling arbitration and abating state-court proceedings is an unappealable interlocutory order, regardless of whether the FAA or TAA applies); *cf. Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that an order compelling arbitration and dismissing remaining claims is appealable as a final judgment).

Because we lack jurisdiction to entertain the appeal, it is hereby dismissed. *See N.Y. Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 679 (Tex.1990) (per curiam) (holding that in the absence of express statutory authorization, the assumption of appellate jurisdiction over an interlocutory appeal is fundamental error). We do however, have jurisdiction over Labidi's petition for writ of mandamus, which raises the same issues.

## A. Standard of Review

 To be entitled to mandamus relief, the relator must demonstrate that (1) the trial court clearly abused its discretion and (2) an appellate remedy is inadequate. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig.proceeding). A trial court has no discretion to determine what the law is or apply the law incorrectly; thus, its clear failure to properly analyze or apply the law constitutes an abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding) (addressing law regarding unconscionability). But orders compelling arbitration can be appealed after final judgment. *See Chambers,* 242 S.W.3d at 32 (citing *Green Tree Fin. Corp.-Ala.,* 531 U.S. at 89). "Because arbitration is intended to provide a lower-cost, expedited means to resolve disputes, mandamus proceedings will often, if not always, deprive the parties of an arbitration agreement's intended benefits when a compel-and-stay order is at issue; accordingly, courts should be hesitant to intervene." *In re Poly–America, L.P.,* 262 S.W.3d 337, 347 (Tex.2008).

## B. Failure or Want of Consideration

 Labidi first contends that "no independent consideration [was] given for the arbitration provision," but the law does not require separate identifiable consideration attributable to the arbitration provision. *Emerald Tex., Inc. v. Peel,* 920 S.W.2d 398, 402 (Tex.App.-Houston [1st Dist.] 1996, no writ); *see also In re First-Merit Bank, N.A.,* 52 S.W.3d 749, 757–58 (Tex.2001) ("[A]n arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by

---

1. 9 U.S.C.A. §§ 1–16 (1997).

2. Tex. Civ Prac. & Rem Code Ann. §§ 171.001–.098 (Vernon 2005).

3. *See* 9 U.S.C.A. § 16(b)(2); *Perry Homes v. Cull,* 258 S.W.3d 580, 586 (Tex.2008).

4. *See* Tex. Civ Prac. & Rem.Code Ann § 171.098(a); *Chambers v. O'Quinn,* 242 S.W.3d 30, 31 (Tex.2007) (per curiam).

adequate consideration."). Here, the provision is supported by reciprocal promises as well as by the underlying contract. *See In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 676–77 (Tex.2006) (orig.proceeding). Thus, Labidi's first issue does not support his petition for writ of mandamus.[5]

## C. Unconscionability and Fraud in the Inducement

 "[A]rbitrators must decide if an entire contract was fraudulently induced, while courts must decide if an arbitration clause was." *Perry Homes,* 258 S.W.3d at 589. Although Labidi contends that both pages of the agreement containing all of the contract's terms were removed and replaced, he has not suggested that any provision other than the arbitration clause was changed or added. It therefore was appropriate for the trial court to make the determination of whether Labidi's allegations are true, and to resolve any doubts about such factual matters in favor of arbitration. *See Henry v. Gonzalez,* 18 S.W.3d 684, 688–89 (Tex.App.-San Antonio 2000, pet. dism'd).

### 1. Procedural Unconscionability

 Labidi's fraudulent-inducement argument and his assertion of procedural unconscionability are both based on his allegation that his attorneys substituted different pages to the engagement agreement after Labidi signed it. The success or failure of this argument "is dependent upon the existence of facts which allegedly illustrate unconscionability." *Besteman v. Pitcock,* 272 S.W.3d 777, 788 (Tex.App.-Texarkana 2008, no pet.) (quoting *El Paso Natural Gas. Co. v. Minco Oil & Gas Co.,* 964 S.W.2d 54, 60–61 (Tex.App.-Amarillo 1997), *rev'd on other grounds,* 8 S.W.3d 309 (Tex.1999)). The real parties in interest deny the allegation, and the trial court's ruling indicates that it resolved the conflicting evidence in their favor. Where, as here, the facts impliedly found by the trial court are supported by the record, we will not disturb them. *See id.*

### 2. Substantive Unconscionability

 Regarding substantive unconscionability, Labidi argues that he received "no benefit of the bargain" for the loss of his right to jury trial, discovery, and unspecified civil and evidentiary protections. If such arguments were sufficient, then arbitration provisions would be unconscionable per se, but this is not the case: arbitration agreements are not inherently unconscionable. *Palm Harbor Homes,* 195 S.W.3d at 678; *Emerald Tex.,* 920 S.W.2d at 402. Labidi's arguments are similar to those rejected in *Emerald Texas,* in which the evidence of unconscionability was as follows:

> The contract clause was drafted by Emerald. I was not represented by a lawyer when I entered into this contract. During the discussions about this contract no mention was made concerning the arbitration clause or its alleged rela-

---

5. Labidi alternatively asserts that the contract provision at issue is not an arbitration agreement because it does not allow the parties to voluntarily select an arbitrator of their choice. This is not a requirement. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.041(a) ("The method of appointment of arbitrators is as specified in the agreement to arbitrate."). In a related argument, he contends that the arbitration agreement is unenforceable because Sydow failed to attach the referenced list of retired judges, one of whom was to select an arbitrator. The attorneys correctly point out that even if that the reference to such a list were unenforceable, that sentence of the arbitration provision is severable, and an adequate remedy for the omission is available. *See id.* § 171.041(b) (court on application of party shall appoint qualified arbitrators if agreed method fails or cannot be followed); *Bird v. Kornman,* 152 S.W.3d 154, 159 (Tex.App.-Dallas 2004, pet. denied).

tionship to design and building defects. The contract was presented as a standard earnest money contract. I was not informed of the existence of the arbitration clause nor its alleged effect on our rights. I do not have any expertise in the area of homebuilding or negotiating real estate transactions. I did not receive any consideration for allegedly foregoing my legal right to a trial.

*Emerald Tex.*, 920 S.W.2d at 402.

■■■ Contrary to Labidi's suggestion, even disputes between a lawyer and client that involve their contract, the attorney-client relationship, or services rendered or fees charged to the client are properly referable to arbitration. *Henry*, 18 S.W.3d at 687–89; *Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 219–22 (Tex.App.-Houston [1st Dist.] 1996, no writ). The arbitration agreement is not grossly one-sided, but is instead a bilateral agreement to arbitrate. *See In re Poly-America*, 262 S.W.3d at 348–49. It therefore is not substantively unconscionable.

## D. Public Policy

■■■ Finally, Labidi argues that the arbitration provision is invalid because it violates Texas public policy. But Texas public policy favors arbitration. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (2008); *FirstMerit Bank*, 52 S.W.3d at 753. And "as both the federal and state arbitration acts pointedly exclude immediate review of orders compelling arbitration, any balancing [of the benefits and detriments of delaying proceedings] must tilt strongly against mandamus review." (*In re Gulf Exploration, LLC*, 52 Tex. Sup.Ct. J. 612, 2009 WL 1028049, at *3 (Tex. Apr. 17, 2009)).

Although Labidi has not explained why he lacks an adequate remedy by appeal, the Texas Supreme Court has noted that "[t]he 'adequacy' of an appeal may be a closer question when the legislature has weighed in on both sides of the balance." *Id.* (citing *In re Poly-America*, 262 S.W.3d at 352). Some of Labidi's arguments seem to be directed toward bringing his petition for writ of mandamus within this category.

### 1. Section 171.002 of the Civil Practice and Remedies Code

■■■ Relying on section 171.002 of the Civil Practice and Remedies Code, Labidi argues that the arbitration provision is unenforceable due to the absence of procedural safeguards, including independent advice of counsel, bold type, and specific agreement to the arbitration provision. But section 171.002 provides as follows:

(a) This chapter [i.e., the Texas Arbitration Act] does not apply to:

 (1) a collective bargaining agreement between an employer and a labor union;

 (2) an agreement for the acquisition by one or more individuals of property, services, money, or credit in which the total consideration to be furnished by the individual *is not more than $50,000*, except as provided by Subsection (b);

 (3) a claim for personal injury, except as provided by Subsection (c);

 (4) a claim for workers' compensation benefits; or

 (5) an agreement made before January 1, 1966.

(b) An agreement described by Subsection (a)(2) is subject to this chapter if:

 (1) the parties to the agreement agree in writing to arbitrate; and

 (2) the agreement is signed by each party and each party's attorney.

(c) A claim described by Subsection (a)(3) is subject to this chapter if:

(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and

(2) the agreement is signed by each party and each party's attorney.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.002 (emphasis added). This statute has no application here: a legal malpractice claim is not a personal injury claim,[6] and section 171.002 does not apply to service contracts in excess of $50,000. Here, the fees at issue are, and were expected to be, more than $100,000. Moreover, if the FAA applies—i.e., if the attorney-client agreement touches on interstate commerce—then such state-specific safeguards are preempted if they would affect the arbitration agreement's enforceability. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69–70 (Tex.2005) (per curiam).

### 2. Ethics Opinion

In his supplemental brief, Labidi cites an October 2008 opinion from the Texas Ethics Commission in which the Commission opined as follows:

> It is permissible under the Texas Disciplinary Rules of Professional Conduct to include in an engagement agreement with a client a provision, the terms of which would not be unfair to a typical client willing to agree to arbitration, requiring the binding arbitration of fee disputes and malpractice claims provided that (1) the client is aware of the significant advantages and disadvantages of arbitration and has sufficient information to permit the client to make an informed decision about whether to agree to the arbitration provision, and (2) the arbitration provision does not limit the lawyer's liability for malpractice.

OP. TEX. ETHICS COMM'N NO. 586 (2008); *see also* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 02–425 (2002) (reaching a similar conclusion). The Commission stated that its conclusion was based on Rule 1.03(b) of the Texas Disciplinary Rules of Professional Conduct, which provides, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app'x A (Vernon 2005) (TEX. STATE BAR R. art. X, § 9 (Vernon 2005)). As the Commission further explained, "The scope of the explanation will depend on the sophistication, education and experience of the client."

But opinions of the Texas Ethics Commission are advisory rather than binding. *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 212 n. 22 (Tex.Crim. App.2007); *Landers v. State*, 229 S.W.3d 532, 535 (Tex.App.-Texarkana 2007), *aff'd*, 256 S.W.3d 295 (Tex.Crim.App.2008); *In re Goodman*, 210 S.W.3d 805, 812 (Tex. App.-Texarkana 2006, orig. proceeding).[7] Moreover, the Commission expressed no opinion regarding the enforcement of arbitration clauses, stating, "It is beyond the authority of this Committee [sic] to address questions of substantive law relating to the validity of arbitration clauses in agreements between lawyers and their clients." Because it is likewise beyond the authority of this court to disregard public policy as articulated by the state and federal legislatures and high courts,[8] Labidi's arguments do not support his petition.

---

6. *Taylor v. Wilson*, 180 S.W.3d 627, 631 (Tex. App.-Houston [14th Dist.] 2005, pet. denied).

7. Labidi also offers no argument or authority for his unexpressed premise that this opinion applies retrospectively.

8. In this connection, we additionally note that

## V. Conclusion

We dismiss Labidi's interlocutory appeal for want of jurisdiction. Because he has not demonstrated that the trial court clearly abused its discretion and that he lacks an adequate appellate remedy, we deny his petition for writ of mandamus.

the procedural safeguards Labidi proposes as a matter of state public policy conflict with the Federal Arbitration Act. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (stating that enforceability of an arbitration agreement does not " 'turn on' [state] public policy and contract law"); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex.2006) (explaining that the FAA preempts the TAA if the latter imposes an enforceability requirement not found in the former); *Nexion*, 173 S.W.3d at 69 ("The TAA interferes with the enforceability of the arbitration agreement by adding an additional requirement—the signature of a party's counsel—to arbitration agreements in personal injury cases."). As explained by the United States Supreme Court:

> [T]he text of § 2 [of the FAA] provides the touchstone for choosing between state-law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* ... "save upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2.... A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

*Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (case citations omitted).