**In re Steven Tuan PHAM.**

**Steven Tuan Pham, Smith &
Garg, L.L.C., and Sarita
Garg., Appellants,**

v.

**Shelly Letney, Appellee.**

**Nos. 14–09–00387–CV, 14–08–01153–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 27, 2010.

Kevin T. Cloves, Houston, for relator.

Timothy A. Hootman, Lance Christopher Kassab, Houston, James R. Jones, Spring, for real party in interest.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and SULLIVAN.

## SUBSTITUTE MAJORITY OPINION

ADELE HEDGES, Chief Justice.

We overrule Shelly Letney's Motion for Rehearing, withdraw our prior opinion is-

sued on March 4, 2010, and substitute this opinion in its place.

In this matter, we have consolidated a petition for writ of mandamus with an interlocutory appeal raising the same issues in the same case. In these proceedings, appellant/relator Steven Tuan Pham challenges the trial courts denial of a motion to compel arbitration with appellee/real-party-in-interest Shelly Letney. Letney sued Pham for legal malpractice, and Pham moved to compel arbitration based on an arbitration clause in a legal services contract. Pham now attacks the trial courts holding that the arbitration clause was invalid or unenforceable because either (1) the lawsuit sought recovery for personal injuries and thus was exempted from arbitration; (2) the Federal Arbitration Act (FAA), identified in the agreement as governing any arbitration thereunder, was inapplicable to the facts of this case; (3) the arbitration agreement was unconscionable; or (4) the arbitration agreement was voidable as being against the Disciplinary Rules of Professional Conduct. Appellants Smith & Garg, L.L.C. and Sarita Garg filed a notice of appeal but then moved to have their appeal dismissed, a motion which we granted, and did not join the petition for writ of mandamus. We dismiss the interlocutory appeal and conditionally grant the writ of mandamus.

## I. Background

Shelly Letney allegedly suffered personal injuries in an automobile accident. She hired the law firm of Smith & Garg, L.L.C. to pursue her claims against the other driver involved in the collision. Sarita Garg is a named partner in the firm. Steven Pham, an associate with the firm, was at least partially responsible for handling Letney's case. The attorney-client agreement between Letney and Smith & Garg contained the following arbitration provision:

### ARBITRATION

Any and all disputes, controversies, claims or demands arising out of or relating to this Agreement or any provision hereof, whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association. Any such arbitration proceeding shall be conducted in Harris County, Texas pursuant to the substantive federal laws established by the Federal Arbitration Act. Any party to any ward [sic] rendered in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered by any federal or state court in Montgomery County, Texas [sic] having jurisdiction.

In the present action, Letney alleges legal malpractice and other claims against Pham, Garg, and Smith & Garg, L.L.C., based on a failure to timely file suit for Letneys alleged personal injuries. The defendants filed a motion to compel arbitration and an amended motion based on the arbitration provision in the contract. Letney filed a response and a supplemental response contending that (1) her claims are exempt from arbitration because she seeks recovery for personal injuries, (2) the FAA is inapplicable because the contract at issue did not affect interstate commerce, (3) the arbitration clause is unconscionable, and (4) the arbitration clause violates the Disciplinary Rules of Professional Conduct.

Attached to her response, Letney also filed an affidavit in which she averred, in

addition to other things relating to the underlying matter, as follows:

> In making my decision to hire Defendants, I relied on various representations regarding the firms diligence, experience, and expertise as listed on the firms website. [¶] At all times prior to and during my representation, Defendants held themselves out to be expert lawyers in the field of personal injury and promised to file suit ... so that I would receive the maximum allowable damages.... When I signed the Contract I was not represented by an attorney. I did not have an attorney to advise me regarding the legal aspects of all terms and conditions in the Contract. No one from Smith & Garg advised me or told me about the arbitration clause in the Contract or what it meant. I have no legal training and do not know what arbitration is or what it means to arbitrate. No one from Smith & Garg advised me or told me that by signing the Contract I could be waiving my constitutional rights to a jury trial.
>
> No one from Smith & Garg went over [the Contract] with me[,] informed me about the pros, cons, advantages or disadvantages, effects and ramifications of the arbitration clause[, or] informed me about my rights and duties under the arbitration clause. I did not obtain advice from outside counsel, or any counsel regarding the arbitration clause prior to signing [the Contract] and no one from Smith & Garg ever advised me to obtain legal advice from outside counsel regarding the arbitration clause.
>
> I trusted Defendants to advise me on all matters regarding Defendants representation of me. Defendants never advised me in any manner whatsoever regarding the arbitration clause. I was unaware that [the Contract] even contained an arbitration clause. Lastly, I did not intend to agree to an arbitration clause.

The trial court denied the motion to compel without stating the basis for the holding.

All of the defendants/appellants filed a joint notice of appeal in the trial court; however, after the case was assigned to this court, appellants Smith & Garg, L.L.C. and Sarita Garg moved to have their appeals dismissed. We granted that motion. These same parties also did not join the petition for writ of mandamus filed by Pham; thus, Smith & Garg and Sarita Garg are no longer parties to the proceedings in this court.

## II. Mandamus or Appeal?

 We begin by determining whether the issues brought in these proceedings are properly raised in a direct interlocutory appeal or in a petition for writ of mandamus. It is well-settled that when a trial court denies arbitration under the Texas Arbitration Act ("TAA"), the order is subject to interlocutory appeal, whereas when a court denies arbitration under the FAA, relief must be sought in a petition for writ of mandamus. *See, e.g., Wachovia Securities, L.L.C. v. Emery,* 186 S.W.3d 107, 111–12 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding) (citing Tex. Civ. Prac. & Rem.Code § 171.098(a)(1) and *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 91 (Tex.1996), et al). Although the motion to compel was somewhat ambiguous in the present case, the only basis for arbitration cited—the arbitration provision in the contract—explicitly designated arbitration pursuant to the FAA. Consequently, we interpret the motion to compel as seeking only arbitration under the FAA; thus, mandamus, and not interlocutory appeal, was the correct procedural vehicle for the relief Pham seeks. *See In re Olshan Found. Repair Co.,* 277 S.W.3d 124, 130–

132 (Tex.App.-Dallas 2009, orig. proceeding) (emphasizing parties' right to specify the rules pursuant to which arbitration shall occur); *In re Kellogg Brown & Root,* 80 S.W.3d 611, 617 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (same). Accordingly, we dismiss Pham's interlocutory appeal and consider the merits of his petition for writ of mandamus. *See Wachovia Securities,* 186 S.W.3d at 112.

### III. Standards of Review

 A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised in the particular lawsuit fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999) (orig. proceeding). If one of the parties denies that there is a binding arbitration agreement, the trial court may decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992) (orig. proceeding). We utilize an abuse of discretion standard in assessing whether a party is entitled to mandamus relief for a trial court's refusal to compel arbitration; however, we consider the trial court's legal determinations—such as whether an arbitration agreement is legally enforceable—de novo. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex.2009) (orig., proceeding). If an existing agreement to arbitrate encompasses the claims in question, and the party opposing arbitration fails to prove any defense to enforcement, the trial court has no discretion: it must compel arbitration. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 753–54 (Tex.2001) (orig., proceeding). On mandamus review of factual issues, a trial court can be held to have abused its discretion only if the party requesting mandamus relief establishes that the trial court reasonably could have

reached only one decision, a decision other than that actually reached by the court. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). A trial court abuses its discretion if it clearly fails to analyze the law correctly or correctly apply the law to the facts. *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex.2005) (orig. proceeding).

### IV. Relator's Arguments

In her affidavit attached to her responses to the motion to compel, Letney acknowledged that she signed the attorney-client representation agreement containing an arbitration provision. Further, she does not contest that the allegations in the present case are within the scope of that provision. In her responses to the motion, however, she raised several defenses against enforcement of the provision. The trial court denied the motion to compel, apparently determining that the provision was invalid or otherwise unenforceable based upon one or more of the grounds contained in Letney's responses. In the petition for writ of mandamus, Pham challenges the trial courts implied holding that the arbitration agreement was invalid or unenforceable on the basis that (1) Letney's claims were for personal injuries and thus exempted from arbitration, (2) the FAA was inapplicable to the case, (3) the arbitration clause was unconscionable, or (4) the arbitration clause was voidable as being against the Rules of Professional Conduct. If any one of these grounds supports the denial of arbitration, we must deny mandamus. We will consider each issue in turn.

### A. Personal Injury Exemption

 Letney's primary argument in response to the motion to compel was based on TAA section 171.002, which prohibits arbitration agreements in respect to claims

for personal injuries unless each party to the agreement receives advice of counsel and the agreement is in writing and signed by each party and each party's attorney. Tex. Civ. Prac. & Rem.Code § 171.002(a)(3), (c). Letney established that she was not represented by counsel when she signed the contract and, consequently, no attorney representing her signed the contract. On that basis, Letney contends that if her claims are deemed to be personal injury claims, then arbitration cannot be compelled under section 171.002. Even assuming that the TAA section in question can apply to an arbitration agreement selecting FAA procedures,[1] it would not apply in the circumstances presented by this case because Letney has alleged legal malpractice in this lawsuit and not personal injury.

There is a split of authority among the Texas courts of appeals regarding whether legal malpractice claims constitute personal injury claims for purposes of section 171.002. Several courts, including this one, have held, as we do here, that legal malpractice claims do not constitute personal injury claims for purposes of section 171.002. *See Chambers v. O'Quinn,* 305 S.W.3d 141, 150–51 (Tex.App.-Houston [1st Dist.] 2009, no pet. h.); *Taylor v. Wilson,* 180 S.W.3d 627, 630–31 (Tex.App.-Houston [14th Dist.] 2005, pet. denied); *Miller v. Brewer,* 118 S.W.3d 896, 899 (Tex.App.-Amarillo 2003, no pet.); *In re Hartigan,* 107 S.W.3d 684, 690–91 (Tex.App.-San Antonio 2003, pet. denied). Only one court, the Corpus Christi Court, has held to the contrary. *In re Godt,* 28 S.W.3d 732, 738–39 (Tex.App.-Corpus Christi 2000, no pet.). As we explained in *Taylor,* the *In re Godt* court incorrectly interpreted a Texas Supreme Court case, *Willis v. Maverick,* 760

S.W.2d 642 (Tex.1988). *Taylor,* 180 S.W.3d at 630. In *Willis,* the supreme court held that a legal malpractice claim was in the nature of a tort for limitations purposes. 760 S.W.2d at 644. The *In re Godt* court incorrectly deduced from this holding, as well as from other erroneous courts of appeals' interpretations of *Willis,* that legal malpractice is a personal injury claim. *Taylor,* 180 S.W.3d at 630. We again decline to follow *In re Godt,* and instead follow our own precedent set forth in *Taylor.*

Letney attempts to distinguish *Taylor,* as well as *Miller* and *In re Hartigan,* by pointing out that the underlying matter in the present case was for personal injuries, *i.e.,* injuries she sustained in an automobile accident, whereas the underlying matters in the other cited cases were not for personal injuries. Indeed, in *Taylor,* we pointed out that *In re Godt* was factually distinguishable because it (*In re Godt*) involved an underlying claim of personal injury (specifically medical malpractice), and the underlying claim in *Taylor* was not for personal injury. *Taylor,* 180 S.W.3d at 630. The Amarillo court distinguished *In re Godt* in the same manner in *Miller. Miller,* 118 S.W.3d at 899. However, we agree with the First Court of Appeals' recent analysis in *Chambers v. O'Quinn,* wherein it explained that a legal malpractice cause of action is one for economic loss and not personal injury caused by the defendant, and the fact that the case on which the malpractice action was based was one for personal injury does not transform the malpractice action into an action alleging personal injury. 305 S.W.3d 141, 150–51. Because Letney's claim in the present case is for legal malpractice and not personal injury, we find no merit in

1. Because the parties did not raise and do not brief the question of whether section 171.002 can apply to an arbitration agreement that

selects the FAA, we will instead address the issue raised and briefed.

her argument based on application of TAA section 171.002. The trial court erred if it refused to compel arbitration on the basis of section 171.002.

### B. FAA Applicability

■ Letney further argued in her responses that arbitration pursuant to the FAA would be improper, despite the selection of FAA arbitration in the arbitration clause, because the contract in question, for legal services in Texas concerning a Texas-based claim, had no impact on interstate commerce. However, this court, along with a number of other Texas courts of appeals, have already rejected this argument, holding that when parties agree to arbitrate under the FAA, that agreement will control the arbitration irrespective of whether interstate commerce is involved in or impacted by the agreement. *See, e.g., In re Chestnut,* 300 S.W.3d 386, 398 (Tex. App.-Dallas 2009, orig. proceeding); *In re ReadyOne Indus., Inc.,* 294 S.W.3d 764, 769 (Tex.App.-El Paso 2009, orig. proceeding); *Ernst & Young L.L.P. v. Martin,* 278 S.W.3d 497, 499 (Tex.App.-Houston [14th Dist.] 2009, no pet. h.); *In re Jim Walter Homes, Inc.,* 207 S.W.3d 888, 896 (Tex. App.-Houston [14th Dist.] 2006, orig. proceeding); *In re Kellogg Brown & Root,* 80 S.W.3d 611, 617 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). We are bound by our prior precedent, as is the trial court. *See Nabelek v. Bradford,* 228 S.W.3d 715, 720 (Tex.App.-Houston [14th Dist.] 2006, writ denied). Here, the arbitration provision in question clearly specified arbitration under the FAA; accordingly, the trial court erred if it denied the motion to compel because the transaction in question had no impact on interstate commerce.

### C. Unconscionability

■ Letney additionally argued in her response that the arbitration provision was unconscionable and therefore invalid. In her argument to the trial court, Letney relied heavily on Chief Justice Hardberger's dissent in *Henry v. Gonzalez,* 18 S.W.3d 684 (Tex.App.-San Antonio 2000, pet. dism'd by agr.). In *Henry,* Justice Hardberger maintained that "special public policy considerations are implicated when an attorney imposes an arbitration provision on his or her client." 18 S.W.3d at 692 (Hardberger, C.J., dissenting). He further detailed the advantages an attorney typically holds over a prospective client during contract negotiations, including a greater base of knowledge and greater bargaining power. *Id.* at 693. He then argued that arbitration clauses between attorney and client should be held against public policy in the absence of additional protections for the client. *Id.* at 693–94. While we are not unsympathetic to Justice Hardberger's concerns, or the concerns expressed by Justice Seymore in his dissent in the present case, we believe that such policy arguments are better directed to the legislature. Indeed, the legislature has already considered limitations on arbitration agreements in certain contexts, as demonstrated by section 171.002 of the Texas Civil Practice and Remedies Code, and has yet to see fit to include attorney-client contracts among those requiring restrictions. Moreover, this court has already addressed and rejected the notion that arbitration provisions in attorney-client contracts are inherently unconscionable without additional restrictions. *See Labidi v. Sydow,* 287 S.W.3d 922, 927–28 (Tex.App.-Houston [14th Dist.] 2009, orig. proceeding).

In her briefing to this court, Letney greatly expanded her unconscionability argument. She premised her additional contentions on the notion that a fiduciary relationship can develop between an attorney and a prospective client prior to their

entering into a formal contract for legal services, citing Restatement (Second) of Agency § 390 cmt. e (1958) ("[i]f . . . in the case of attorney and client, the creation of the relation involves peculiar trust and confidence, with reliance by the principal upon fair dealing by the agent, it may be found that a fiduciary relation exists prior to the employment and, if so, the agent is under a duty to deal fairly with the principal in arranging the terms of the employment."), et al.[2] Letney contends that on such basis, it may be incumbent upon the attorney to ensure that the prospective client is fully informed and advised regarding the nature and implications of any arbitration clause contained in the formal contract.

The problem for Letney, however, is not that it is impossible for a special, fiduciary, or attorney-client relationship to arise prior to entering a formal agreement but that she has not brought forth evidence that such occurred here. See In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex.2001) (orig. proceeding) ("[T]he burden of proving a defense to arbitration is on the party opposing arbitration."). The only evidence Letney attached to her response was a copy of the contract and her own affidavit. In her affidavit, Letney stated that in making her decision to hire appellants she relied on various representations made on the firm's website regarding the firm's qualities. She acknowledged that no one from Smith & Garg advised her or told her about the arbitration clause or its implications. She said that she "did not obtain advice from outside counsel, or any counsel regarding the arbitration clause prior to signing" the contract. Although Letney states generally that appellants "held themselves out to be expert lawyers in the

field of personal injury" and that she trusted them to advise her on all matters regarding their representation of her, she does not identify any negotiations, discussions, or counseling that occurred prior to her signing of the contract that could have given rise to a special relationship between the parties. Indeed, Letney's affidavit establishes nothing more than that she read statements on the firm's website and then signed the contract. The reading of statements on a website is not by itself evidence of the development of a special relationship. See Barron Partners, L.P. v. LAB123, Inc., 593 F.Supp.2d 667, 671 (S.D.N.Y.2009). Letney's statements that she relied on and trusted the defendants are conclusory in nature and likewise do not, by themselves, constitute evidence that a special relationship had developed. Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 595 (Tex.1992) ("[M]ere subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship."). In short, Letney failed to carry her burden of proving her defense of unconscionability.

Lastly, Letney cites to an opinion rendered by the Texas Ethics Commission in which the Commission suggested that it would be permissible under the Texas Disciplinary Rules of Professional Conduct to include an arbitration clause in an attorney-client contract only if the client was made aware of the advantages and disadvantages of arbitration and had sufficient information to make an informed decision as to whether to include the clause. See Op. Tex. Ethics Comm'n No. 586 (2008). Letney contends that this opinion supports the notion that for an arbitration clause in an attorney-client contract to be consid-

---

**2.** Letney also cites Restatement (Third) of Agency § 15 cmt. b (2000) for the proposition that mere consultation between an attorney and a prospective client creates a fiduciary relationship. However, neither this section of the Restatement nor the referenced comment either states or directly supports the proposition for which they are cited.

ered valid, an attorney must make sure that the client is fully informed regarding the clause's implications. However, in *Labidi*, we considered a substantially similar argument based on the exact same ethics opinion. 287 S.W.3d at 929. We concluded in *Labidi* that Opinion No. 586 did not impose any restrictions on attorney-client arbitration clauses because (1) such opinions are advisory at best, (2) the commission expressly declined in the opinion to opine on the substantive law concerning arbitration clause enforceability, and (3) substantive law does not include any such restrictions. *Id.* Following *Labidi*, we decline to impose a requirement that attorneys must in all cases fully inform prospective clients regarding the implications of an arbitration clause in an attorney-client contract. This argument is best preserved for the legislature.

For the foregoing reasons, the trial court erred if it refused to compel arbitration based on unconscionability of the arbitration agreement.

## D. Disciplinary Rules

■ Letney's final argument in response to the motion to compel was based on Texas Disciplinary Rule of Professional Conduct 1.08(g), which provides that "[a] lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement. . . ." Tex.R. Prof. Cond. 1.08(g), *reprinted in* Tex. Gov't Code Ann. Tit. 2, subtit. G app. A (Vernon 1998). Citing this rule, Letney asserted that the arbitration provision at issue in this case improperly limited Pham's potential liability to her as a client. However, an agreement to arbitrate does not, in fact, limit a party's liability; it merely denominates a procedure for determining that liability. *See,*

*e.g., Chambers*, 305 S.W.3d 141, 150–51; *In re Hartigan*, 107 S.W.3d at 689. Accordingly, Letney's argument based on section 1.08(g) is without merit, and the trial court erred if it denied arbitration on that basis.

## V. Conclusion

None of the arguments Letney made in response to the motion to compel arbitration have merit, and there is no other basis for affirming the trial court's order denying the motion. Consequently, we hold that the trial court abused its discretion in denying the motion. We therefore dismiss the interlocutory appeal and conditionally grant the writ of mandamus.

SEYMORE, J. dissenting.

CHARLES W. SEYMORE, Justice, dissenting.

In consideration of the unique relationship between attorney and client, I write this dissenting opinion to express my concern about mandatory arbitration provisions in attorney-client agreements.

I have no disagreement with the majority's analysis and disposition of all issues with the exception of Shelly Letney's claim that the method or means of inducing her signature on the agreement renders enforcement procedurally unconscionable. I adopt former Fourth Court of Appeals Chief Justice Phil Hardberger's concern that special public-policy considerations are implicated when an attorney imposes an arbitration provision on his or her client. *See Henry v. Gonzalez*, 18 S.W.3d 684, 692 (Tex.App.-San Antonio 2000, pet. dism'd) (Hardberger, C.J., dissenting). Accordingly, I disagree with the majority's decision to "decline to impose a requirement that attorneys must, in all cases, fully inform prospective clients regarding implications of an arbitration clause in an attorney-client contract."

Whatever public policy may be served by enforcing arbitration agreements is more than offset by the public policy of insuring that consumers of legal services have protection from attorneys who might take advantage of their clients. Shelly Letney, a personal-injury claimant, is representative of the average consumer of legal services. She should be afforded the expectation that an attorney is obligated to fully reveal and explain potential conflicts of interests at the inception of the relationship. Moreover, the attorney should offer the prospective client an opportunity to seek advice from another source before signing an attorney-client agreement that contains language potentially detrimental to the client's interests if the client later finds it appropriate or necessary to pursue the attorney for malpractice or other misconduct.

Under the Texas Disciplinary Rules of Professional Conduct, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Tex. Disciplinary R. Prof'l Conduct 1.03(b), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9). The Supreme Court of Texas Professional Ethics Committee agrees that lawyers should be allowed to insert arbitration clauses in their client contracts as long as "(1) the client is aware of the significant advantages and disadvantages of arbitration and has sufficient information to permit the client to make an informed decision about whether to agree to the arbitration provision, and (2) the arbitration provision does not limit the lawyer's liability for malpractice." See Tex. Comm. On Prof'l Ethics, Op. 586 (2008).

Notwithstanding the application of settled contract law and public policy favoring alternate dispute resolution, many respected jurists and lawyers oppose arbitration because it is not cost effective, disgorges unwary consumers of the right to a jury trial, and eliminates appellate review for errors of law. I remain a proponent of arbitration. However, when the legislature and rule-making authority in the legal profession fail to protect consumers of legal services, I believe the courts have an obligation to act because public perception of the legal profession's ability to self-police is not favorable.

Based on Shelly Letney's averment that she was unaware of the arbitration agreement and her sworn statement that petitioner did not fully explain the terms, I would hold the trial court did not abuse its discretion by denying the petitioner's motion to compel arbitration. Accordingly, I respectfully dissent.